[No. 12376. Department Two. — June 22, 1891.]

J. C. SMITH, RESPONDENT, v. HENRY SCHULTZ, DEFENDANT. L. E. CALDWELL ET AL., APPELLANTS.

LEASE — FARMING UPON SHARES — MUTUAL COVENANTS — LANDLORD AND TENANT — PARTNERSHIP.— A written contract purporting to be a lease of a certain tract of land for a specified term, with mutual agreements to be performed by both parties, by the terms of which the parties of the second part were to plant crops and make certain improvements, and the party of the first part was to furnish certain farming implements, seed, and feed, and make certain other improvements, and the increase of certain live-stock then on the farm, as well as certain shares of the crops, were to be delivered to the party of the first part, and closing with the provision that in case of default in any of the covenants by the parties of the second part, their executors, administrators, and assigns, the first party might re-enter, but if no default were made, the parties of the second part should hold the premises for the term without hindrance from the party of the first part or his assigns, is in legal effect a lease for a definite term of years, and creates the relation of landlord and tenant, and not a partnership.

ID. — TERMINATION OF LEASE — OPTION OF LESSOR.— Such lease cannot be dissolved or terminated at the option of the lessor before the expiration of the term, except upon re-entry for breach of the covenants on the part of the lessee.

ID. — INTENTION OF PARTIES — YIELDING OF SHARES AS RENT.— Where a written instrument is intended by the parties to be a lease, and is in the form of a lease, its effect as such is not destroyed by the covenants of the lessee, the legal effect of which is that he will deliver as rent certain shares of the increase of certain live-stock, and certain shares of the crops.

APPEAL from an order of the Superior Court of Contra Costa County denying a new trial.

The facts are stated in the opinion of the court.

*George A. Wentworth, George W. Chamberlain,* and *Selden S. & George T. Wright,* for Appellants.

It is true that the occupation of land for the purpose of raising a crop upon shares does not create a tenancy; but if, however, the lessee agrees to pay a certain part of the crop expressly as rent, or if he holds the land with the usual privileges of an exclusive enjoyment, it creates a tenancy for the time agreed upon, though the land may have been taken to cultivate on shares. (1 Taylor on Landlord and Tenant, 8th ed., sec. 24, and notes; Gear on Landlord and Tenant, sec. 42, and notes.) For a discussion of the difference between a tenant and a mere cropper, see *Walls* v. *Preston,* 25 Cal. 59; *Strain* v. *Gardner,* 61 Wis. 174; *Taylor* v. *Bradley,* 39 N. Y. 129; 100 Am. Dec. 415; *Johnson* v. *Hoffman,* 53 Mo. 504; *Moulton* v. *Robinson,* 27 N. H. 550; *Wentworth* v. *P. & D. Railroad,* 55 N. H. 540. An agreement to share the profits does not necessarily make a person liable to third persons as a partner; and *a fortiori,* not as between himself and the others interested. (*Shaw* v. *Galt,* 16 I. C. L. R. 357; *Holme* v. *Hammond,* L. R. 7 Ex. 218; *Mollwo* v. *Court of Wards,* L. R. 4 P. C. 419; see Civ. Code, secs. 2395, 2444, 2445; *Wheeler* v. *Farmer,* 38 Cal. 213; *Robinson* v. *Haas,* 40 Cal. 478; *Quackenbush* v. *Sawyer,* 54 Cal. 440.)

*Ben Morgan,* for Respondent.

The agreement constituted a contract of partnership. (See Civ. Code, secs. 2395, 2404.)

McFARLAND, J. — The complaint sets forth a certain written instrument, executed December 10, 1883, by plaintiff, J. C. Smith, as party of the first part, and the defendants Schultz and L. E. Caldwell, parties of the

second part, and avers that said instrument created a partnership between said three persons " in the business of raising hogs," to be conducted on a certain tract of land, or ranch, owned by the plaintiff, and which, by the terms of said instrument, is leased to said Schultz and L. E. Caldwell for the term of three years from the first day of December, 1883. It is also averred that said L. E. Caldwell and Schultz were given and took possession of said land, and certain live-stock and personal property thereon, and that they failed to perform certain things enumerated in said written instrument, and abandoned said land and stock. It is further averred that the other defendant, A. P. Caldwell, claims to have purchased the interests of said Schultz and said L. E. Caldwell in said instrument, and to have succeeded to their right under the same. It is also averred that said A. P. Caldwell is incompetent to carry out the agreements of said instrument; that he made said purchase against plaintiff's wishes; that plaintiff has no confidence in his ability or integrity; that he is insolvent; that he is in possession of the ranch and the live-stock thereon, and refuses to give them up; and that the personal property is in danger of being lost and injured. The prayer is for judgment against Schultz and L. E. Caldwell for a dissolution of the alleged partnership, an accounting and settlement, the appointment of a receiver, etc., and that said A. P. Caldwell be adjudged to have no interest or title to any of the property, and no rights under said written instrument.

Schultz answered, admitting the averments of the complaint as against him, but averring that on March 5, 1884, he sold and assigned to the defendant A. P. Caldwell all his right to the partnership land, and property described in the complaint, and that he has no interest therein. He prayed to be discharged.

Separate answers were filed by the Caldwells, in which all the material averments of the complaint were de-

nied, except the execution of the said written contract, and it was denied that said instrument created a partnership. It was also averred in said answers that said instrument was the result of negotiations between plaintiff and the defendant A. P. Caldwell, who is the father of said L. E. Caldwell; that at plaintiff's request A. P. Caldwell allowed Schultz to be united with him as a party to the instrument; that L. E. Caldwell had advanced, or was to advance, some money to his father, A. P., and that for his security the name L. E. instead of A. P. Caldwell was inserted in the instrument, with the consent of plaintiff; that the real contract was between plaintiff on the one part, and A. P. Caldwell and Schultz on the other, and that it was well understood and consented to by plaintiff that L. E. Caldwell would not enter upon the land, or take possession of the personal property, or carry out the contract, but that the same should be done by A. P. Caldwell and Schultz, who, with the knowledge and consent of plaintiff, took possession of the premises and property, and proceeded to comply with the provisions of said instrument; that on March 5th, the said Schultz, with the knowledge and consent of plaintiff, sold and assigned all his interest in said instrument and property to said A. P. Caldwell, who afterwards, and until the commencement of this action (which was December 26, 1884), remained in possession, and continued to comply with the provisions of said instrument, with the knowledge and consent of plaintiff; and that on December 6, 1884, said L. E. Caldwell, for the purpose of putting the legal title in A. P. Caldwell, assigned to the latter all his interest in said instrument.

The court tried the case upon the theory that the written instrument, of its own force, created a partnership between plaintiff, Schultz, and L. E. Caldwell; that plaintiff could at any time, at his own pleasure, dissolve said alleged partnership, put an end to the further operation of the instrument, ignore the term of three years·

therein provided for, and take immediate possession of the ranch. By the findings, the main averments of the complaint are found to be true, and the material averments of the answers of the Caldwells untrue. By the judgment and decrees the partnership was dissolved; a receiver was appointed, who took possession of all the property; a referee took an accounting; judgment was rendered against L. E. Caldwell and Schultz for a large sum of money to be paid out of the assets, and A. P. Caldwell was decreed to have succeeded to their rights in the property, and to be entitled to any surplus remaining out of the assets after payment of the judgment and other charges, and it was decreed that plaintiff " be fully restored to his possession of all the real property described in the complaint, and to all the original stock owned by him on the premises at the date of the agreement of December 10, 1883, or which he may have put thereon at any time since, which has not been sold and accounted for by the receiver." The defendants L. E. and A. P. Caldwell made a motion for a new trial, and from an order denying said motion they appeal.

We do not see how the judgment can be maintained.

At the trial the only evidence introduced by the plaintiff was,—

1. The instrument itself, upon which there was the following indorsement:—

"March 5, 1884.

" For value received, I hereby sell, assign, transfer, and set over unto A. P. Caldwell, his heirs and assigns, all my right, title, and interest in and to the within indenture of *lease*, and the land therein described.

[Signed]                    " HENRY SCHULTZ."

2. A statement by plaintiff as a witness, as follows: " Subsequent to December 6, 1884, I have not made any contract or agreement to carry on business with A. P. Caldwell. The land is used for pasturage, pasturing stock exclusively. I have no confidence in A. P. Cald-

well. I know that he don't pay me his bills. He could n't pay me; that is all I know about it." And

3. A statement by A. P. Caldwell, called as a witness by plaintiff, as follows: "I reside on Smith's ranch. I am one of the defendants in this suit. I am not on the tax roll in this county. I have no money in bank anywhere. I owe some money in this county, and some outside this county."

There was a cross-examination of plaintiff by defendants' attorney, and many of his questions were ruled out on objections made by plaintiff. The exceptions to these rulings need not be here examined. Sufficient evidence was admitted on the cross-examination to show that down to the latter part of September, 1884, at least, the plaintiff recognized and dealt with A. P. Caldwell as rightfully in possession of the land and property and carrying out the contract. Defendants moved for a nonsuit on proper grounds, and the motion was overruled. Defendants then introduced uncontradicted evidence showing that the substantial averments and denials of the answers of the Caldwells were true, and also that valuable permanent improvements had been made to the land by the lessees, which would be lost to them if the term of the lease were shortened. Under these circumstances we do not think that any finding of the court upon any material issue is supported by the evidence.

Moreover, we think that the motion for a nonsuit should have been granted. Plaintiff's case in chief depended entirely upon the proposition that the said instrument in writing constituted a partnership; and we do not think that such proposition can be maintained.

The instrument is in form a lease. The first part of it (omitting immaterial matters) is as follows: "This indenture, made the tenth day of December (1883), between [naming Smith as party of the first part, and Schultz and L. E. Caldwell as parties of the second part] witnesseth, that the said party of the first part, for

and in consideration of the covenants and agreements hereinafter mentioned, reserved, and contained on the part and behalf of said parties of the second part, their executors, administrators, *and assigns*, to be kept and performed, has granted, demised, and let, and by these presents doth grant, demise, and let, unto the said parties of the second part all that farm, ranch, and tract of land [here follows a description of a certain tract of land in Contra Costa County, containing 485 acres] for the term of three years from the first day of December (1883), with the privilege to the said parties of the second part to keep fattening hogs on said ranch until the first day of January next succeeding the expiration of *this lease.*" Then follow certain covenants and agreements to be performed by each of the parties. The principal agreements by the parties of the second part are, that they are, at stated times during the term, to put certain fields in alfalfa, barley, carrots, etc., and to build certain fences and make certain improvements, — some in the first year, some in the second year, and some in the third year of the term, — and to manage the ranch in a farmer-like way. The plaintiff was also to furnish certain farming implements and seed and feed, to make certain improvements, and to furnish certain materials for fencing, etc. The instrument recites that there are certain hogs belonging to plaintiff on the ranch, and provides that they are to remain the property of plaintiff, but "the increase of hogs and the profits thereon" are to be divided, one half to the party of the first part, and the other half to the parties of the second part, — sales to be made, however, only upon "the mutual consent of the parties hereto." There is also a provision about certain fowls on the ranch, "the increase, yield, and profits" of which are to be divided, one third to go to the party of the first part. There is also a provision about alfalfa hay, which is to be baled by the parties of the second part, and put into a warehouse, or delivered at a

landing, and divided equally between the parties. Mention is also made about certain horses and cattle, and some provisions made in relation to them. There are other stipulations and agreements, not material to the determination of the character of the instrument. It closes with the provisions that "in case default shall be made in any of the covenants herein contained, on the part of said parties of the second part, their executors, administrators, *and assigns,* to be kept and performed," then the party of the first part may re-enter, etc.; but that if said covenants are so performed, then said parties of the second part "shall and may at all times during said term peaceably and quietly hold and enjoy said premises without any suit, let, trouble, or hindrance of or from said party of the first part, his heirs or assigns."

This instrument certainly created a lease of the land for a term of three years from December 10, 1883; and we cannot see upon what recognized principle plaintiff, at his own pleasure, could terminate it during the first year. His right to do so could come only from some breach of covenant by the lessees which, by the terms of the lease or operation of law, worked a forfeiture and gave a right of re-entry. But plaintiff did not show, or attempt to show, any such breach. The lease on its face was expressly assignable; and plaintiff offered no evidence that either the original lessees named in the instrument, or the assignee, A. P. Caldwell, failed to perform any of the things undertaken to be performed by the parties of the second part.

The theory that the instrument created an ordinary partnership between the three persons, Smith, Schultz, and L. E. Caldwell, which gave to either of them the right at his own pleasure to end at any time the relation which the instrument created, is erroneous. It was in form and legal effect a lease for a definite term of years, and the relation which it created was that of landlord and tenant. It did not create a partnership. In the

first place, neither the word "partnership" nor "partner," nor any other word or phrase ordinarily employed in written contracts of copartnership, was used. The use of such words, of course, is not essential when the whole instrument shows clearly that a partnership was meant; but their absence is significant when such intent is not clear. In the second place, the idea of a permanent lease for a definite term of years is at war with the notion of such an indeterminate and fitful a relation as that of a partnership. And in the third place, there is nothing in any of the language of the instrument that expresses or suggests the intention that plaintiff was to be a general partner in business with the defendants, or either of them (and certainly there was no special partnership within the provision of the code). It gives no power to one to bind the others; it contemplates no common liability; it does not make one the agent for the others in carrying on any business whatever; it contains no agreement, either express or implied, for the division of any losses; and there is no intimation in it that plaintiff was to be "liable to third persons for all the obligations of the partnership, jointly with his copartners." (Civ. Code, secs. 2404, 2429, 2442, 2443.) Nor does it contain any agreement among themselves that the party of the one part should be bound to any extent for the obligations of the party of the other part. They were not to be partners, therefore, either as to third persons, or *inter sese*. The instrument was a letting upon shares, and cannot be distinguished in principle from the one considered in *Walls* v. *Preston*, 25 Cal. 60. In that case the instrument was in form a lease for a certain term, with covenants by the lessee that he would properly cultivate the land and give to the lessor a certain share of the crops. It was there sought to "explain away" the lease by the theory that it was not indeed a partnership, but a cropping contract. The court, after an elaborate consideration of the subject, Rhodes, J.,

delivering the opinion, concludes as follows: " It clearly appears to us that the parties in this case intended to make a lease, and that the instrument executed by them was a lease; but its effect as such was not destroyed by their having contracted for the payment to the lessor of a portion of the specific crops to be produced, and that that covenant was an agreement to pay the rent of the premises out of the crops." And so in the case at bar, the legal effect of the covenants of the lessees is simply that they will deliver, as rent, certain shares of the increase of certain live-stock, as well as certain shares of crops. A similar contract as to the increase of sheep was held in *Robinson* v. *Haas*, 40 Cal. 478, not to constitute a partnership. (See also, on the general subject of partnership, *Wheeler* v. *Farmer*, 38 Cal. 213; *Barber* v. *Cazalis*, 30 Cal. 98; and *Smith* v. *Moynihan*, 44 Cal. 57.) There being no partnership, the judgment was therefore erroneous. If the lessees or their assignee broke the covenants of the lease, the respondent has a clear remedy.

The order appealed from is reversed, and the cause remanded for a new trial.

GAROUTTE, J., and DE HAVEN, J., concurred.

Hearing in Bank denied.