CASE 77.—ACTION BY THE BANK OF TAYLORSVILLE AGAINST H. C. MATHIS—February 8, 1910.

## Mathis v. Bank of Taylorsville

Appeal from Spencer Circuit Court.

CHARLES MARSHALL, Circuit Judge.

Judgment for plaintiff, defendant appeals.—Affirmed.

1.   Venue—Change of Venue—Grounds.—In an action against a bank by a well-known physician in the same county, a showing that the bank has a large number of depositors and borrowers, many stockholders, is the leading financial institution of the community, and has considerable influence in the county, is insufficient to establish undue influence, warranting a change of venue.

2.   Pleading—Variance—Evidence—Admissibility.—The evidence in a case should be confined to the issue made by the pleadings.

3.   Trial—Instructions to Jury—Issues of Case.—Instructions should relate only to issues made.

4.   Appeal and Error—Review—Harmless Error—Submitting Issue to Jury.—In an action by a bank on notes, executed by defendant's son, in defendant's name, to satisfy overdrafts of the son's account, where the issue of the existence of a partnership between the defendant and his son was not raised by the pleadings, but the court on a prior appeal stated that if they were partners in the venture in which the money drawn out on overdrafts was invested, and the account was opened up in the name of the son, with the father's knowledge and consent and for the benefit of the firm, and he

ratified the notes given, he should be held on them, so that upon the return of the case to the trial court the only real question between the parties was one of partnership and on the retrial the evidence was directed to this issue, and the question submitted to the jury by instructions authorized by the appellate court, the error, if any, in submitting this issue, not made by the pleadings, was harmless.

5. Partnership—Liability as to Third Persons—Actions—Questions for Jury.—In an action on notes executed by defendant's son in defendant's name, evidence held to make it a jury question whether defendant and his son were partners in the venture in which the money for which the notes were given was expended.

6. Partnership—Liability as to Third Persons—Evidence—Sufficiency.—In an action on notes executed by defendant's son in defendant's name, evidence held sufficient to sustain the finding that the defendant and his son were partners in the venture in which the money for the payment of which the notes were given was expended.

7. Witnesses—Partnership—Liability as to Third Persons—Evidence.—In an action by a bank on notes executed by defendant's son in defendant's name to cover overdrafts on the son's account, where the principal issue was whether the defendant and son were partners in the enterprise in which the money drawn out on overdrafts was expended, testimony of the bank's president that the son had stated to him that he and his father were in partnership, where the son denied making this statement was admissible as affecting the son's credibility, but incompetent as substantive testimony to prove partnership.

8. Appeal and Error—Review—Harmless Error—Evidence.—In an action by a bank on notes executed by defendant's son in defendant's name to cover overdrafts on the son's account, defendant was not prejudiced by allowing the bank's president to state that the overdrafts were good only in case the defendant was bound, where the fact that the son was insolvent was abundantly established.

JOHN S. KELLEY and REASON & CRUME for appellant.

WILLIS & TODD and L. W. ROSS for appellee.

OPINION OF THE COURT BY WM. ROGERS CLAY, COMMISSIONER—Affirming.

This is the second appeal of this case. The opinion on the first appeal may be found in 105 S. W. 157, 32 Ky. Law Rep. 200. The facts of the case are fully set out therein, and it will be unnecessary to detail them again. After that opinion was handed down, the Bank of Taylorsville filed a petition for rehearing. To the petition for rehearing the court, through Judge Carroll, filed the following response, which may be found in 106 S. W. 1174, 32 Ky. Law Rep. 807: "On the trial of this case, counsel for the contending parties directed their chief efforts to the issue whether or not the power of attorney was a limited or unlimited one. This seems to have been regarded as the pivotal point in the case. That it was so considered by the trial judge is apparent from the fact that he only submitted to the jury one instruction; that being directed to this issue. It is pointed out in the petition for rehearing, filed by counsel for appellee, that it can be shown on another trial that H. C. Mathis was interested as a partner with C. G. Mathis in the ventures or business enterprises in which the money drawn from the bank by C. G. Mathis and that constituted his overdrafts was invested, and that the overdrafts were made with his approval and consent, and the notes executed in satisfaction of them were ratified by him. Although in our opinion C. G. Mathis was not directly authorized to sign H. C. Mathis' name to the notes executed by him for overdrafts in his (C. G. Mathis') account, nevertheless, if H. C. Mathis was a partner of C. G. Mathis in the ventures or business enterprises in which the money drawn out on overdrafts was invested, and if the account was opened up in the name of his son with his (H. C. Mathis') knowledge and consent, and for the benefit of the firm, and he rati-

fied and approved the notes given to satisfy the over-
drafts, he should account to the bank for such sums.
So that, in addition to the instruction given on the
former trial, the court should rather· instruct the
jury that to the extent that the notes, or any of them,
are made up in whole or in part of overdrafts in the
account of C. G. Mathis, H. C. Mathis is not responsi-
ble on them, unless the jury believe from the evi-
dence that H. C. Mathis and his son were engaged
in business as partners and the money represented
by the overdrafts was borrowed for the firm in the
name of the son with the knowledge and consent of
H. C. Mathis, to be used in the firm business, or that
H. C. Mathis knew, or the facts known to him were
such as to put a reasonable man on notice, that his
son was borrowing the money on his (H. C. Mathis')
credit for the business in which he was interested
with his son, and H. C. Mathis, after he knew that his
son had executed the notes sued on, or any of them,
agreed to pay the same, or approved the act of his
son in signing his name.   (2)   If they so believe,
they should find against H. C. Mathis to the extent
that the notes represent money advanced to the firm
in the name of his son, .with H. C. Mathis' knowl-
edge and consent, to be used in the firm business and
to the extent of the money advanced on his credit,
and with his knowledge for the use of their joint busi-
ness that is included in notes that he agreed to pay
or approve the act of his son in signing.   The con-
verse of these instructions should be given for ap-
pellant if requested.   We are asked by counsel for
appellee to strike from the opinion certain language
deemed to reflect on the business management of the
bank in its dealings with the Mathises. The expres-
sions complained of were used by the writer of the

opinion solely as an argument, or illustration to show why H. C. Mathis should not be held responsible for overdrafts in the account of C. G. Mathis. Unless in this respect they may be considered a criticism on the bank officials, they were not so intended. The petition for rehearing is overruled.''

Upon the return of the case a trial was had and the jury again returned a verdict in favor of the Bank of Taylorsville. From the judgment based thereon, H. C. Mathis is here on appeal.

The first error assigned is the failure and refusal of the court to sustain appellant's petition for a change of venue. The application for a change of venue was based upon the alleged undue influence of appellee is Spencer county. The evidence heard upon this application in behalf of appellant was to the effect that the Bank of Taylorsville was the principal financial institution of Spencer county; that the county had about 1,800 voters, of whom about 1,000 or 1,200 were eligible to jury service; that the bank's depositors numbered about 700 or 800; that, in addition to this, it had 30 stockholders. Besides these, there was a considerable number of people who borrowed from the bank. Such persons lived in every section of the county. While appellant's witnesses testified to the influence of the bank in the county, the majority of them on cross-examination were of opinion that appellant could obtain a fair trial in the county. The statute authorizes a change of venue where undue influence is shown. The evidence in this case fails to disclose any influence other than that growing out of the successful operation of the bank and the following secured by reason of a well-earned reputation. Although such following is

shown to be large, this fact alone is not sufficient to show undue influence. The mere showing that a bank has a large number of depositors and borrowers will not justify the conclusion that a well-known physician of the same county cannot secure a fair trial when litigating with the bank. We therefore conclude that the court did not err in refusing to grant appellant a change of venue.

It is next insisted that the court erred in submitting to the jury the issue of partnership, as such issue was not made in any pleading in the case. While it is true that the evidence in a case should be confined to the issues made by the pleadings, and that the instructions should relate only to the issues so made, a peculiar state of facts is presented in this case. In its response to the petition for rehearing this court said that, although in its opinion C. G. Mathis was not directly authorized to sign H. C. Mathis' name to the notes executed by him for overdrafts in his (C. G. Mathis') account, nevertheless, if H. C. Mathis was a partner of C. G. Mathis in the ventures or business enterprises in which the money drawn out on over-drafts was invested, and if the account was opened up in the name of his son with his (H. C. Mathis') knowledge and consent, and for the benefit of the firm, and he ratified and approved the notes given to satisfy the overdrafts, he should account to the bank for such sums. This response did not direct that appellee amend its pleading. Upon the return of the case, the only real question between the parties was one of partnership. Upon the trial of the case, the evidence was directed to this issue. The case was fought out along that line. This question was submitted to the jury by instructions authorized by this

court.  Under these circumstances, we conclude that
it would be highly technical to set aside the verdict
of the jury on the ground that the issue of part-
nership was not presented by proper pleadings.  Such
error, if any, could not have prejudiced the substan-
tial rights of appellant.

Upon the question of partnership, the evidence of
appellant and his son, C. G. Mathis, was to the effect
that no partnership existed.  It was shown that on
January 1, 1903, appellant leased his farm to his son,
C. G. Mathis, and his son-in-law, C. W. Muir.  The
arrangement between C. G. Mathis and C. W. Muir
was abandoned.  Some time in February the interest
of Muir in the partnership venture and in the prop-
erty that had been bought to carry on the business
was sold and paid for by appellant's check for the
sum of $50.  The evidence for appellant further tend-
ed to show that, after the interest of Muir was pur-
chased, C. G. Mathis remained the sole lessee of the
farm.  At the time of the leasing to Muir and C. G.
Mathis, they executed a note for the rent.  The name
of C. W. Muir was erased from this note.  When ap-
pellant advanced certain sums to his son, it was mere-
ly a case of borrowing and lending, and not because
of any interest appellant had in the conduct of the
farm or in property on the farm.  On the other hand,
the evidence for appellee is to the effect that prior to
January 1, 1903, appellant and C. G. Mathis were
partners in the operation of the farm.  The son fur-
nished the labor, the father the capital and the farm,
and the son was to have one-third of the profits.
When Muir was released from his rent, appellant
stated that this threw the farm back on his hands.
After Muir retired, appellant paid some of the hands
on the farm.  In the year 1903 appellant listed all

the property on the farm in his own name. Appellant undertakes to explain this by saying that he was listing the property of his son. When appellant came into the bank to examine his personal account, he said: "I want to see our farm account." Whenever he came into the bank he insisted on seeing the farm account. In reply to the proposal of one witness to sell appellant some cattle, appellant replied that he did not think they could handle them— they were full up. To another witness he stated that he was in the cattle trade. To still another witness, who offered to sell him cattle, he said: "Well, we would like to have those cattle, but you are a little high on them." Other circumstances tending to show a partnership were related by various witnesses, but we deem it unnecessary to set them out.

While there is a sharp conflict in the testimony, and much to sustain the contention of appellant that no partnership existed, the question was one for the jury, and we cannot say that their verdict is flagrantly against the evidence.

The court did not err in permitting the banks' president (Mr. Bourne) to testify to a conversation had with C. G. Mathis, in which the latter stated that Charley Muir had declined to go into partnership with him and that his father had taken his place. C. G. Mathis, on cross-examination, was asked if he had made such a statement, and he denied that he had. The evidence in question was incompetent as substantive testimony to prove partnership, but was admissible as affecting the credibility of C. G. Mathis, and the court so told the jury. Indeed, throughout the case the court did not permit any statements of C. G. Mathis, to the effect that he and his father

vol. 136—41

were in partnership, to go to the jury for the purpose
of establishing that a partnership existed.

Nor are we able to see how appellant was preju-
diced by the statement of the president of the bank
that the overdrafts in the account of C. G. Mathis in
the bank were good if H. C. Mathis was bound, and
were not worth anything if he was not bound. The
fact that C. G. Mathis was insolvent is abundantly
established in the record, and there was not a man
upon the jury who did not know this fact, regardless
of Mr. Bourne's statement.

The instructions given by the court are very long,
and it will be unnecessary to set them out at length.
Suffice it to say that in every substantial respect they
conform to the instructions directed to be given by
this court in the opinion and extended opinion on
the former appeal.

Perceiving no error in the record prejudicial to
the substantial rights of appellant, the judgment is
affirmed.