CHARLES S. MERSICK & another *vs.* ABRAHAM BILAFSKY & another.

Suffolk.    March 1, 1910. — May 17, 1910.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & BRALEY, JJ.

*Partnership,* What constitutes.    *Evidence,* Admissions and confessions.

At the trial of an action against a father and his son for the purchase price of certain plumbing goods which were alleged to have been furnished by the plaintiff under a special contract made with the defendants about July 30 of a certain year for use in buildings which were being erected for a third party, a material question was whether the defendants were partners. There was evidence tending to show that shortly after the son became of age, which was previous to the time of the alleged contract with the plaintiff, he and his father, whose name was B., used the same office and a letter head with the imprint "B. & Son, Real Estate and Insurance," with the office address thereon; that in the January preceding the making of the contract, in bankruptcy proceedings concerning the person for whom the houses were being built, the father had testified that he and his son were partners; that bills for the goods furnished were sent almost weekly to the father at the office occupied by him and his son, and that not until November, after substantially all of the goods had been furnished and actually used, was any notice received from the father that he was not the person to be charged for the goods; that the son had drawn a check in the father's name, by himself as attorney, to pay for the examination of the title of the property upon which the houses were being built; that the father had what was intended ultimately to be a second mortgage upon that property, which had been given by the owner to a man of straw and assigned to him; that the father was on the premises while the buildings were being constructed and made complaints in regard to some of the materials that were furnished; that the father was introduced by one agent of the plaintiff to another as one of their customers while the goods were being furnished, and made no objection thereto; that the son in talking to the plaintiff's agent said that "they" wanted to get the plumbing material, and spoke of their interest in the property, using the word "we," and, upon the agent's refusing credit to the owner, assented to the offer of the plaintiff to furnish the goods to "them" if "they" would pay for them; and that a letter by the plaintiff's agent to the father requesting a written order for goods "your plumber has ordered" came back with the words indorsed thereon in pencil, "Send goods at once"; that while the account was running some one who said he was "Mr. B." asked the plaintiff's agent over the telephone to change the account from the name of the father to that of the son, as the son was acting as trustee for the owner. The foregoing evidence was contradicted in all essential particulars. *Held,* that the question whether the defendants were partners was for the jury.

While it is true that declarations or acts of one partner, in the absence or without the knowledge of the other, are not evidence of the existence of the partnership as against such other, such declarations or acts are admissible against the party making them, and the existence of a partnership thus may be established against both partners by the separate admissions of the individuals composing it.

CONTRACT against Abraham and Benjamin F. Bilafsky, with a declaration in three counts, the first on a special contract, made about July 30, 1902, for plumbing goods furnished for three houses being built on Addington Road in Brookline for one Louis Habelow, the second count on an account annexed for goods furnished outside the contract, and the third on an account annexed for the goods described in both the first and second counts. Writ dated December 18, 1902.

The case was referred to George R. Blinn, Esquire, as auditor. He filed a report, in which he found that the plaintiffs had delivered the goods described in the declaration in accordance with an agreement made with the defendant Benjamin F. Bilafsky, and found for the plaintiffs against him. As to the defendant Abraham Bilafsky, he found as follows: "I find that on the other hand the defendant Abraham had no knowledge of the making of said agreement and is not bound thereby; that he never agreed to pay for said goods and that he is in no way liable therefor. The plaintiffs introduced evidence tending to show the existence of a partnership between the defendants at the time of the making of said contract for furnishing the said plumbing supplies, and I find that such partnership did then exist but that it was limited to the real estate and insurance business carried on by them and that the transactions in question did not come within the scope of said partnership, and that the defendant Abraham did nothing which would make him liable as such partner to the plaintiffs. I consequently find that as against the defendant Abraham the plaintiffs are not entitled to recover."

The case was tried before *Sanderson,* J.

The letter head on the letter dated October 14, 1902, which was a letter from Habelow to Rounds and Dennison Corporation requesting them to send "to Addington Road, Brookline, the finish plumbing," was as follows:

Notary Public.                           Justice of the Peace.
A. Bilafsky & Son,
Real Estate and Insurance
30 Court Street.

Other facts are stated in the opinion.

The jury found for the plaintiffs against both defendants; and the defendants alleged exceptions.

*J. C. Ivy*, for the defendants.

*F. N. Nay*, (*L. W. Peters* with him,) for the plaintiffs.

MORTON, J.  This is an action of contract to recover from the defendants for plumbing materials alleged to have been furnished to the defendants for use in the construction of certain houses which one Louis Habelow was building in Brookline. The answer was a general denial and the statute of frauds. The case was sent to an auditor who found against the defendant Benjamin and in favor of the defendant Abraham. Afterwards there was a jury trial, and a verdict for the plaintiffs for the full amount claimed was returned against both defendants.  The case is here on exceptions by both defendants to the refusal of the presiding judge to give certain rulings that were requested, and to the instructions that were given.  There are also numerous exceptions in regard to the admission and exclusion of evidence.

The goods were furnished through the Rounds and Dennison Corporation, who acted as Boston agents for the plaintiffs, and the principal question is whether there was any evidence warranting a finding that the defendants were partners, either generally or as to the real estate for which the goods were furnished. We think it is plain that there was.  A letter head was introduced in evidence bearing the imprint " A. Bilafsky & Son, Real Estate and Insurance, 30 Court Street."   When the defendant Benjamin was asked on cross-examination when that first began to be printed he answered, " After I became twenty-one years of age," meaning, it might fairly be inferred, soon after he became twenty-one, which, according to the statement of his age elicited in his cross-examination, would fix the time as previous to the time when the plaintiffs began to furnish the goods sued for. There was also testimony tending to show that the defendant Abraham had testified in bankruptcy proceedings concerning Louis Habelow in January, 1902, that he and his sons were partners.  He attempted to qualify and explain this, but it was for the jury to give his testimony such weight as they thought it fairly entitled to.  There was also testimony tending to show that the two occupied the same office at 30 Court

Street, that bills for the goods furnished were sent almost weekly
to the defendant Abraham at 30 Court Street, and that it was
not until November 12, after substantially all of the goods had
been furnished and actually used in the construction of the
buildings, that any notice was received from him that he was
not liable; that the defendant Benjamin drew a check in his
father's name, by himself as attorney, to pay for the exami-
nation of the title to the property, though he testified that he
afterwards returned the amount to his father; that the defend-
ant Abraham had what was intended ultimately to be a second
mortgage on the property given by Habelow to a man of straw
and assigned to him; that he was on the premises while the
buildings were in the process of construction and complained in
regard to some of the materials that were furnished; that he
was introduced by one of the members of the Rounds and Den-
nison Corporation to the other as one of their customers while
the goods were being furnished, and made no objection thereto;
that the defendant Benjamin said in talking with Mr. Dennison
of the Rounds and Dennison Corporation, that "they" wanted
to buy a lot of plumbing material, and spoke of the interest
which they had in the property, using the word "we," and,
when Mr. Dennison refused to bill the goods to Habelow on
the ground that he was in bankruptcy, assented to the offer
made to furnish the goods to "them" if "they" would pay for
them; that a letter addressed to the defendant Abraham re-
questing a written order for goods "your plumber has ordered"
came back with the words indorsed on it in pencil, "Send goods
at once"; and that Rounds and Dennison were called up while
the account was running by what purported to be a telephone
message from Bilafsky's office, the person at the other end say-
ing that it was Mr. Bilafsky talking, and asking to have the
account changed from A. Bilafsky to B. F. Bilafsky, for the
reason that he was acting as trustee for Habelow. There were
also other circumstances bearing upon the nature of the business
relations between the defendants when the contract for furnish-
ing the goods was entered into by the plaintiffs, and during the
time that the goods were being furnished.

Both defendants strenuously denied that they were partners,
and denied many of the things testified to as above and offered

explanations as to others, and testified to matters tending to show that they were not partners and that the goods were furnished to Habelow and that neither one of them was liable therefor. The auditor also found that they were not partners. In this conflict of evidence it was plainly for the jury to determine what the facts were and to decide, if they could, where the truth lay. It clearly could not have been ruled, it seems to us, that there was no evidence warranting a finding that the defendants were partners. See *Bagley* v. *Wonderland Co.* 205 Mass. 238.

It is no doubt true, as the defendants contend, that the declarations or acts of one partner, in the absence or without the knowledge of the other, are not evidence of the existence of a partnership as against such other. But they are admissible against the party making them, and a partnership may thus be established by the separate acts and admissions of those who it is contended constitute it. *Currier* v. *Silloway*, 1 Allen, 19. *Rosseau* v. *Deschenes*, 203 Mass. 261. Applying this rule we see no error in the admission of the evidence that was offered for the purpose of showing that the defendants were partners. The letter head on the letter dated October 14, 1902, written by Habelow, was plainly admissible as tending to show that the defendants were holding themselves out as partners, and derived additional significance from the facts that appeared in relation to Habelow's connection with them. In regard to the scope and effect of evidence of acts and representations by one defendant as against the other defendant, the jury were instructed in accordance with the rule stated above. Neither do we see any error in the instructions or refusals to instruct in respect to what would have to be found to establish a partnership. The question was essentially one of fact, and the jury were so told and were also instructed in substance and effect that partnerships might be established in different ways, and that it was for them to consider the various matters that had been introduced in evidence and give them such weight as they thought they were entitled to; and if they found that the defendants "were together in this enterprise and were responsible for this contract" with the plaintiffs, then they would be justified in returning a verdict against both defendants; otherwise not. We do not think that the instructions thus given afford the defendants any just ground for complaint.

The trial judge instructed the jury that unless it was shown by a preponderance of the evidence that the goods had been delivered to and accepted by the defendants or their authorized agent, the case would come within the statute of frauds and there could be no recovery. He further instructed them that in order to constitute an acceptance there must be some clear and unequivocal act on the part of the defendants or their authorized agent. It is plain that there was evidence warranting a finding that the goods had been delivered to and accepted by the defendants or their authorized agent, and that the case did not therefore come within the statute of frauds.

As we have said, numerous exceptions were taken to the admission and exclusion of evidence. It would seem as though many of them were taken with little regard to what the law really was and were utterly frivolous. We have considered them all and find nothing in any of them which requires the exceptions to be sustained.

*Exceptions overruled.*