[Civ. No. 7219. First Appellate District, Division One.—November 22, 1930.]

OSCAR KRENZ COPPER AND BRASS WORKS, INC. (a Corporation), Appellant, v. W. A. ENGLAND et al., Respondents.

CHARLES M. BAILEY CO. (a Corporation), Appellant, v. W. A. ENGLAND et al., Respondents.

748

Byron Coleman for Appellants.

Sloss & Ackerman for Respondents.

THE COURT.—The above actions were brought to recover for goods alleged to have been sold and delivered to defendants W. A. England and H. E. Moss. The trial court

found in favor of England, who will be hereinafter referred to as the defendant, and the plaintiffs have appealed from the respective judgments entered in his favor.

About the year 1916 the defendant with one Dunn became interested in developing a paint-spraying machine, upon which Dunn subsequently procured letters patent. The business of manufacturing and selling the machine was, pursuant to an agreement with the patentee, conducted under the name of Dunn's Paint Machine Co. In 1917 defendant filed in the office of the clerk of the city and county of San Francisco a certificate, in which he declared himself to be the only person interested in the business. The business was continued until 1922, when Dunn died, whereupon defendant ceased to manufacture. It appears, however, that he continued to sell such machines as had been previously manufactured until, according to his testimony, the demand ceased. In June, 1925, defendant entered into an agreement with Dunn's widow, who had become the owner of the patent, whereby he was granted the right upon the payment of certain royalties to manufacture and sell the machines. Thereafter in October, 1925, an agreement was made between defendant, therein called the licensor, and H. E. Moss, called the licensee, whereby defendant granted to Moss the exclusive right to manufacture and sell the machines, the latter agreeing to perform the contract between defendant and Mrs. Dunn. It was further agreed that defendant should advance to Moss the sum of $750, which was to be expended for advertising, the same to be repaid from the first profits realized. Moss was also granted the right to use the name ''Dunn Painting Machine Company'', it being agreed that he would file a certificate, as required by statute, showing that he was doing business under that name. The latter further agreed to direct the sales and devote his entire time to the development of the business, and pay to the defendant monthly as a royalty fifty per cent of the profits thereof. The agreement provided that whenever the net profits of the business should amount to $30,000 then the business should be incorporated, the assets transferred to the corporation and the capital stock of the corporation divided, defendant to receive fifty-one per cent and Moss forty-nine per cent thereof. It was also stipulated that the arrangement should continue for

one year, and if at the end of that period the business showed a profit of not less than $600 per month the contract, at the option of Moss, should continue for another year, and thereafter as long as the same minimum profit should be maintained.

It appears that Moss, who had been employed as secretary for a trade association, of which the Eng-Skell Co. was a member, was without capital. Defendant, who was president of the company last named, testified that when the contract was made he did not contemplate the advancement of any money to Moss as the latter assured him that arrangements had been made for funds to carry on the business. Shortly after Moss commenced operations, however, he applied to defendant for advances to cover his living expenses, stating that he had been unable to procure the capital expected. These defendant agreed to make, and monthly payments were made to Moss for this purpose by the Eng-Skell Co. at defendant's request. No capital appears to have been procured by Moss, and at his request defendant continued to make advances for the purpose of carrying on the business. There was advanced between October 14, 1925, and May 14, 1927, sums aggregating $7,820. This included the advances for living expenses and the amount which under the contract was to be advanced for advertising purposes. These amounts were unsecured and no part thereof was repaid.

In addition to the above there were advanced by defendant between June 7 and September 2, 1927, sums aggregating $8,914.62. These advances were made upon the security of assigned accounts due the concern, and of these accounts Moss collected and defendant was repaid therefrom the sum of $8,795.49. Defendant also indorsed two notes executed by Moss, one for $2,000, which Moss paid, and another for $1250, which remains unpaid.

In June, 1926, Moss, without advising the defendant until after the arrangement had been made, granted to one Charles W. Harris the exclusive right to sell the machines on commission under the name of Dunn Painting Machine Co., Sales Division. Defendant, however, did not disapprove, and the testimony shows that Harris expended approximately $5,000 in furthering the sale of the machines. This arrangement, however, was terminated by Moss in

January, 1927, and Harris continued as an employee until May, 1927. The defendant then paid Harris a balance of $400 owing him for commissions and charged the amount to Moss. In October, 1927, Moss became a bankrupt, and his assets were insufficient to pay the claims against the business.

The testimony also shows that all the manufacturing, buying and selling was done by Moss; that defendant took no part in arranging for the location of the business or the leasing of the premises where the same was conducted; that Moss purchased the office equipment and engaged and directed the employees; that defendant was not authorized to draw checks upon the bank account of the concern and had no access to the books; further, that he exercised no supervision over the business or gave Moss instructions respecting its management, nor did the agreement give him the right to do any of these things. It was testified by defendant that he did not intend to form a partnership, and by Moss that he was conducting the business under the described contract.

Except as shown by the documentary evidence mentioned, the above facts were developed by the testimony of Moss and the defendant.

It is urged by appellants that there being no conflict in the evidence the question of the existence of a copartnership is one of law and not of fact, citing *Westland* v. *Post Land Co.*, 115 Wash. 329 [197 Pac. 44, 45]. While this is the rule when the facts are undisputed, or the question depends upon the interpretation of an unambiguous written instrument, where the evidence is open to more than one inference, the question is one for the jury or the court sitting as a jury (*Stenian* v. *Tashjian*, 178 Cal. 623 [174 Pac. 883]; *McNab* v. *Mills*, 199 Cal. 231 [248 Pac. 657]; *Eggleston* v. *Wilson*, 211 Ala. 140 [100 South. 89]; *DeLong* v. *Whitlock*, (Iowa) 210 N. W. 791; *Mathis* v. *Taylorsville Bank*, 136 Ky. 634 [124 S. W. 876]; *Mersick* v. *Bilafsky*, 205 Mass. 488 [91 N. E. 889]; *Benoliel* v. *Homac*, 87 N. J. L. 375 [94 Atl. 605]; *Hall* v. *Linn*, 112 Or. 1 [228 Pac. 127]; *McCoy & Son* v. *First Nat. Bank of Cleveland*, 123 Okl. 170 [252 Pac. 404]; *Arava* v. *Bebe*, 48 R. I. 478 [139 Atl. 302]; 47 Cor. Jur., Partnership, sec. 542, p. 1004).

■ As contended by appellant, the intention of the parties in transactions of this character is not controlling; and they may notwithstanding incur the liability of partners.

■ It has been held that the mere form of the agreement between them is immaterial if the transaction be in fact a joint adventure for mutual profit; and that the law will not countenance contrivances for giving parties the whole advantage of a partnership without subjecting them to its liabilities (*San Joaquin Light & Power Corp.* v. *Costaloupes,* 96 Cal. App. 322 [274 Pac. 84]). ■ On the other hand it has been held that although the sharing of profits is one of the elements of the partnership relation a mere participation in profits does not necessarily constitute a partnership relation (*Coward* v. *Clanton,* 122 Cal. 451 [55 Pac. 147]). As stated in *Martin* v. *Sharp & Fellows Co.,* 34 Cal. App. 584 [168 Pac. 373], after quoting the code definition of a partnership (Civ. Code, sec. 2395): "Under this definition a mere participation in profit and loss does not necessarily constitute a partnership for, as said in *Dwinel* v. *Stone,* 30 Me. 384, 'there must be such community of interest as empowers each party to make contracts, incur liabilities, manage the whole business—a right which upon the dissolution of the partnership passes to the survivor and not to the representatives of the deceased . . . The association must be one for the purpose of jointly carrying on the business'." To the same effect are the cases of *Prince* v. *Lamb,* 128 Cal. 120 [60 Pac. 689], and *Auditorium Co.* v. *Barsotti,* 40 Cal. App. 592 [181 Pac. 413].

■ Moreover, it has been held that it is the sharing of profits as such which constitutes *prima facie* evidence of a partnership, and that the relation is not established by a mere promise to pay a share of the profits as compensation for services (*Coward* v. *Clanton, supra*), or for the use of property (*Nofsinger* v. *Goldman,* 122 Cal. 609 [55 Pac. 425]; *Vanderhurst* v. *Dewitt,* 95 Cal. 57 [20 L. R. A. 595, 30 Pac. 94]), or, as in the case of *Wheeler* v. *Farmer,* 38 Cal. 203, where one party in consideration of a right granted by the other, who was the inventor of a machine, agreed to make and vend the machine at his own expense, procure letters patent thereon to the inventor and pay the latter a percentage of the profits of sale.

A partnership relation was not mentioned in the agreement; and while the existence of the relation may be established though the words partner or partnership are not used, the presence or absence of such words may be significant where the circumstances leave the question in doubt (*Smith* v. *Schultz*, 89 Cal. 526 [26 Pac. 1087]). And it has also been held that the fact that one party was given no voice in the control of the business is relevant. Another fact, which doubtless had weight with the trial court, was that defendant was under no obligation to advance anything to Moss other than the $750 which was to be used for advertising purposes and repaid.

The evidence taken as a whole is sufficient to support the conclusion of the trial court that no partnership existed. Though there is no conflict in the evidence, the inferences fairly deducible therefrom were such that different conclusions might rationally be drawn; and where this is the case the conclusion reached by the trial court cannot be disturbed on appeal (*MacDermot* v. *Hayes*, 175 Cal. 95 [170 Pac. 616]). The same rule applies where a writing is ambiguous and the interpretation given thereto by the trial court is tenable and one which under all the circumstances appears consistent with the true intent and meaning of the parties (*Manley* v. *Pacific Mill & Lumber Co.*, 79 Cal. App. 641 [250 Pac. 710].)

One of the plaintiffs, namely, Oscar Krenz Copper and Brass Works, Inc., sought to show that it extended credit on the representation that defendant was a partner. Its president testified that for several years before the contract between Moss and the defendant was made this company had sold merchandise ordered by defendant, whom they knew, for the account of Dunn Painting Machine Co.; that they were told by Moss that defendant was the sole owner of the business; that no notice to the contrary was received, and that credit would not have been extended to Moss except through the belief that defendant was interested in the concern. Moss denied making these statements, and testified that before any merchandise was purchased by him he informed the president of the plaintiff above named of the character of his relations with defendant and showed him the contract between them. The weight to be given to this testimony was a question for the trial court

(Code Civ. Proc., sec. 1847), and where the testimony is conflicting its determination is conclusive on appeal (*Crawford* v. *Stove Pipe Works,* 83 Cal. 629 [24 Pac. 836]).

The judgments appealed from are affirmed.

A petition for a rehearing of this cause was denied by the District Court of Appeal on December 22, 1930, and a petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 19, 1931.