WILLIAM NORRIS, JR. *vs.* DAVID M. ANTHONY & another.

Bristol.　　October 22, 1906. — November 27, 1906.

Present: KNOWLTON, C. J., MORTON, HAMMOND, BRALEY, & RUGG, JJ.

*Negligence.　Agency.　Master and Servant.*

It is not as matter of law negligence on the part of a woman in charge of her grandchild one year and nine months old to take the child with her in going to the clothes line in a good sized door yard to see if a few things she needs are dry and temporarily to leave him inside the gate of the yard which usually is open from whence he goes into the street and is run into and knocked over by a wagon.

In an action by a child, one year and nine months old when injured, for personal injuries from being run into and knocked over by a meat wagon of the defendant, where there is evidence that the driver was walking his horse in broad daylight in a wide, straight street, and before he saw the child saw an acquaintance to whom he spoke, in doing which he turned his head around away from the side where the child was, if the driver testifies that he saw some boys standing at a watering trough on the other side of the street and that he did not see the child until he was six inches from the hub of his front wheel, and another witness testifies that when the team struck the child the driver's head was turned looking behind him on the side away from the child and that there were no other teams "around there," there is evidence for the jury of negligence on the part of the driver.

In an action against two defendants named respectively A. and S. and alleged to be partners carrying on business under the firm name of A. S. and Company, for personal injuries alleged to have been caused by the negligence of the driver of a team of the defendants, there was ample and uncontradicted evidence that the driver of the team which injured the plaintiff was in the employ of A. S. and Company at the time of the accident, but the defendants contended and introduced evidence to show that this name was used by a certain corporation, and it did not appear that one of the defendants ever had been in the city where the accident occurred or that the other defendant was at the place of business of A. S. and Company except "once in a while." The manager of the business testified that the defendants "were simply stockholders in the corporation." Neither of the defendants appeared at the trial, and no charter of the alleged corporation was produced; there was no evidence of the proceedings for its incorporation nor were any of its books shown. *Held*, that the question of the connection of the defendants with the business in which the driver was employed was one for the jury.

In an action against persons alleged to be carrying on business as partners for injuries caused by the negligence of a person alleged to have been in the defendants' employ, where the defendants deny the existence of the partnership, if a witness for the plaintiff testifies that the concern employing the negligent servant was a partnership consisting of the defendants whose names appeared in the firm name, and afterwards on cross-examination testifies that his knowledge on this subject is derived solely from the directory, and the presiding judge instructs the jury to disregard the evidence as mere hearsay, this is a compliance with a motion of the defendants to strike out the evidence, and is correct.

TORT against David M. Anthony and E. C. Swift, described as partners, doing business under the firm name of Anthony, Swift and Company, for personal injuries from being run over or knocked down by a horse and wagon driven by one Bly alleged to have been a servant of the defendants on Mott Street in Fall River on November 4, 1904. Writ dated January 21, 1905.

In the Superior Court the case was tried before *Bell*, J. The plaintiff at the time of the accident was one year and nine months old and was in charge of his grandmother who lived on the west side of Mott Street.

The contentions of the defendants and the evidence in support of them are stated in the opinion.

The witness Pritchard, mentioned near the end of the opinion in the paragraph numbered 4, was a deputy sheriff and testified for the plaintiff that he had lived in Fall River for a great many years; that he knew of the place there run by Anthony, Swift and Company; that he had occasion as a deputy sheriff to serve papers on Anthony, Swift and Company since 1904; that he knew the concern of Anthony, Swift and Company in business there previous to November, 1904; and that he believed the concern consisted of E. C. Swift and David Anthony.

On cross-examination he testified that he had knowledge of the fact that there was a place there on Plymouth Avenue with a sign marked Anthony, Swift and Company, but that his knowledge that Anthony, Swift and Company consisted of David M. Anthony and E. C. Swift was derived from the directory, in which he had had occasion to look it up at different times.

The counsel for the defendants asked that the evidence be stricken out. The judge afterwards charged the jury on this matter as follows:

"I instruct you that so far as the evidence came from the directory as to who was in this firm, or who was a firm, that you are to disregard it, because it is mere hearsay evidence; it has no authority in court. All that was offered in any directory I think I excluded at the time, but all that was offered on cross-examination, that is, if it came second hand, if it came through a witness, if a witness said that he knew that a firm was Swift and Anthony and it appeared that all the source of knowledge he had was from the directory, we are back to the directory again, and the stream does not rise higher than its source, and his quoting the directory to you here or giving the contents of the directory here has no additional validity because it has so passed through his mind on the way rather than been read to you direct from the book, so far as the evidence shows it you will leave out of your consideration that which has no better foundation, no better source, than the directory."

At the close of the evidence the defendants asked the judge to make the following rulings:

1. The defendant Swift is not liable.

2. The defendant Anthony is not liable.

3. The driver of the wagon was not negligent.

4. The plaintiff was not in the exercise of due care.

5. The plaintiff's caretaker was not in the exercise of due care.

8. There is no evidence that the defendants were partners.

9. There is no evidence that the defendant Swift employed the driver.

10. There is no evidence that the defendant Anthony employed the driver.

11. The evidence of Pritchard as to who composed the firm of Anthony, Swift and Company should be stricken out.

13. The jury should find for the defendants.

15. There is no evidence that the defendants employed the driver.

17. The evidence that the defendants constituted the partnership is hearsay and should be stricken out.

The judge refused to make any of these rulings except so far as quoted above, and instructed the jury that in order to hold the defendants liable the plaintiff must show that the relation of master and servant, employer and employee, existed between Bly and the defendants.

The jury found for the plaintiff in the sum of $1,200; and the defendants alleged exceptions.

*J. W. Cummings*, (*C. R. Cummings* with him,) for the defendants.

*M. Druce*, for the plaintiff.

HAMMOND, J. The defendants contend that there was contributory negligence upon the part of the grandmother who had the care of the child, that Bly, the driver of the team, was not negligent, and that there was no evidence that at the time of the accident he was acting as the servant of the defendants. Upon each of these three points the case is very close and the evidence such that a finding for the defendants upon each of them might well have been expected.

1. As to the care exercised by the custodian. She testified " It was around two o'clock and the child was in my care, and I had an occasion to go to the clothes line to ascertain if I had a few things dry that I needed, and I took the child with me, and it

was a lovely day, and I left him inside the gate.* and then the next minute I heard a cry and I saw the child lay in the road and the man running to pick it up." The man was Bly, who had alighted from his team and had reached the child. There was evidence that the child had been across the street and was returning at the time of the accident; and further that he had been playing on the other side of the street "five or ten minutes" before he attempted to recross the street. While it is true that the mere presence of the plaintiff upon the street unattended was *prima facie* evidence of the negligence of the grandmother ( *Gibbons* v. *Williams*, 135 Mass. 333), still, if the jury believed the grandmother, they may have found that she had only temporarily lost sight of the child under circumstances which reasonably justified her in doing so and in thinking no harm would come to him; and that in all she did or omitted to do she was reasonably careful. Such a finding was warranted by the evidence. See *Walsh* v. *Loorem*, 180 Mass. 18, and cases there cited.

2. As to the negligence of Bly, the driver of the team.† Delia Nelmes, called by the plaintiff, testified that she was looking out of the window in the building where the plaintiff lived, and saw the wagon pass at a walk; that the plaintiff came from a yard on the other side of the street, walking "not straight across the road but in a side line"; that the wagon was about in the middle of the street; that as the wagon went by "the back wheel furthest away from her" struck the child and the child fell on the further side of the wagon from her; that when the team struck the child Bly's head was turned, looking behind him to the north on the side farthest from her (which apparently was in the direction of the place where the child was when hurt), and that there were no other teams "around there." On cross-examination she said that she did not see the wagon strike the child or run over it; that the team was going south, and that she "heard the driver holler," and that the plaintiff then fell. Edward Nelmes, a boy sixteen years old, called by the defendants, testified that the child had been playing at a watering trough on the opposite side of the street from his home; that

---

* "It was a good sized yard and the gate was usually open."

† The plaintiff's grandmother described it as "the big meat wagon."

the witness told him to go away; that the child started to go across the street, and when he got " to about a foot from the wagon, the driver hollered and the child fell backwards in the street." Bly, also called by the defendants, testified that he was driving down the street "walking his horse, looking in the direction he was going; that he first saw the child when it came out into the street about six inches from the hub of his front wheel; that he hollered to the child and it fell over; that he did not strike the child or run over it." On cross-examination he said that he first saw the child when it " loomed right up " about six inches from the hub of the wheel; that this was the front wheel; that there were no other teams about there and no other persons except one Thornber and some boys. He further said that before he saw the child, which appeared on the east side of the team, he saw Thornber on the west side and spoke to him; that in thus speaking he turned his head around; that it was " fifty feet or more after he spoke to Mr. Thornber that he saw the child "; that he saw some boys standing at the watering trough which was upon the other side of the street; that he had passed the watering trough; that when he " hollered " the child fell, and that he " jumped right out and picked the child up; . . . it was a clear day; that he was looking straight ahead." There was evidence that when the child was picked up one of its toes was somewhat crushed. Thornber, also called by the defendants, testified that he was walking up the street at the time the child was hurt; that he knew Bly; that he (Bly) was driving his horse at a walk; that he saw the child on the ground after Bly " hollered "; that he saw the child fall, but could not tell whether any part of the wheel struck it. Upon cross-examination he said that before the child was hurt Bly spoke to him (the witness), " bid him the time of day and I spoke; after that when I was just a little behind the wagon I heard a scream, the child was on the ground a short distance from the team." He further testified that when he first saw the child it was " about the centre near the hub " of the further hind wheel from him, and that he " could not swear whether it was pushed by the hub or . . . was scared by the hollering " of Bly.

In view of the broad daylight, the wide, straight street, the evidence as to the presence of children, the absence of any other

teams and the evidence as to the movements of the child, the jury may have come to the conclusion that if Bly had exercised proper care he would have become aware of the presence of this child before it was close under the wheel, and that by reason of his conversation with Thornber, or for some other reason, he failed to see when he ought to have seen, and was therefore negligent. We cannot say as matter of law that the evidence did not warrant a finding for the plaintiff on this branch of the case.

3. As to whether at the time of the accident Bly was acting as the servant of the defendants. One West, called by the plaintiff, testified that he had known Bly for years and had done business with him ; that for eight or ten years last past " Bly was driving teams, taking orders and working for Anthony, Swift and Company," and that during that time he (the witness) had not known him to work for any one else ; " that the team Bly drove was marked Anthony, Swift and Company ; . . . that the bills presented to witness for goods sold him were made out in the name of Anthony, Swift and Company; that on the place of business where Bly worked was the name in big letters, Anthony, Swift and Company." On cross-examination he testified that " he did not know who Anthony, Swift and Company were, only by the name ; that he did not know who they were ; that he was not positive whether it was Anthony, Swift and Company on the wagon or Swift and Company." There was further evidence that on the teams used in the business were the words " Anthony, Swift and Company," and that the blankets were marked in the same way. Indeed it was conceded in the defendants' brief that there was ample and uncontradicted evidence " that the party employing the driver [Bly] used the name of Anthony, Swift and Company," but the defendants contended and introduced evidence tending to show that this name was used by a Maine corporation called Swift and Company, " as a means of keeping the business of the different branches distinct, ' to separate the houses.' " It did not appear that the defendant Swift ever was in Fall River, nor that the defendant Anthony was at the place of business except " once in a while." The manager of the business testified that Anthony and Swift " were simply stockholders in the corpora-

tion." Neither of the defendants appeared, nor was there produced any charter of the alleged corporation, nor was there any evidence whatever of the proceedings for its incorporation, nor were any of its books shown. The evidence that the defendants were stockholders in the corporation justified the inference that in some way or other they were connected with the business, and, in the absence of evidence as to any other persons of the same name being thus connected, justified the further inference that the defendants were the persons respectively designated as Anthony and Swift in the name under which the business was done. Here, then, was presented a case where a business was carried on under an apparent firm name in which appeared the names of the defendants. The name used was such as ordinarily would designate a firm rather than a corporation. It was of vital importance to the defence to show that Bly's principal was not a firm but a corporation, and it must be assumed to have been in their power to prove by some plain and direct evidence documentary or otherwise, the existence of the corporation. In the state in which the case was left by the defendants, the jury were warranted in coming to the conclusion that the evidence, if presented, would not have been favorable to the defendants upon this point, and that in so far as the title under which the business was conducted indicated a partnership it was in accordance with truth.

4. The request that the evidence of the witness Pritchard as to who composed the firm of Anthony, Swift and Company should be stricken out was substantially complied with by the judge. There appears no error in the manner in which the judge dealt with the request of the defendants as to this.

The case was properly submitted to the jury.

*Exceptions overruled.*