MICHAEL W. SHANNON vs. FRANCIS L. WILLARD.

Middlesex.　January 19, 1909. — March 2, 1909.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & BRALEY, JJ.

*Negligence*, Employer's liability. *Practice, Civil*, Exceptions.

The usual statement that an employee assumes the risk of the obvious conditions of the building in which he accepts employment can be put more accurately by stating that an employer is under no duty to an employee to change the obvious conditions of the building in which the employee accepts employment. Explanation of the underlying principle of this rule by LORING, J.

*It seems* that an employee in a factory does not assume the risk of an accident caused by the leaking of oil from a defective drip pan, if the oil does not drip from the pan continuously and the employee never has seen it drip, such a defect not being obvious at all times.

An employee in a factory assumes the risk of an accident caused by slipping on an obvious oil spot coated with dust on the floor of a loft used as a shipping room which was there when he went to work and has been there continuously ever since.

In an action by a workman in a boiler factory against his employer, for personal injuries caused by slipping on an oil spot on a trap door covering the well of a freight elevator in the floor of a loft of the factory, by reason of which the plaintiff, after having started the elevator by pulling the shipper rope, fell on the trap door and as it rose his leg was caught between the door and one of the uprights on which the elevator ran, if it appears that boilers were piled up on all of the four sides of the elevator well, and had remained so piled for three or four days, leaving a passageway two feet wide as the only means of access to the shipper rope and on the opposite side from this rope, so that an employee had to cross the trap doors to get at it, and that the top of the trap door on which the plaintiff fell was slippery from oil, this is evidence for the jury of negligence on the part of the defendant.

Although an employee in a factory assumes the risk of an accident caused by slipping on an obvious oil spot on the trap door covering an elevator well in the floor of a loft of the factory in which he is working, yet, if he slips on the oil spot, after starting the elevator, and in consequence is unable to get off the trap door before the elevator rises and the door jams his leg against one of the uprights on which the elevator runs, his assumption of the risk of the oil spot as an obvious condition of his employment does not show that he was negligent; and, if in fact he did not know that the trap door was slippery and knew that the elevator moved very slowly, and if also his only means of access to the shipping rope by which the elevator was operated was by crossing the trap door, there is evidence that he was in the exercise of due care.

An employee in a boiler factory does not assume the risk, although existing when he first went to work in the place, of boilers being stacked on all four sides of a pair of trap doors covering an elevator well in the floor of a loft of the factory, so as to leave a passageway only two feet wide on the opposite side from the shipper rope by which the elevator is operated as the only means of access

to that rope, making it necessary for an employee, in order to start the elevator, to cross the trap doors, which are slippery with oil, and, after having pulled the rope to start the elevator, to return over the trap doors before the rising elevator throws them open.

The rule that an employee assumes the risk of what is obvious in the building in which he voluntarily consents to work does not apply to a dangerous condition caused by carrying on the work in a negligent way.

Where at the trial of an action the defendant at the close of the evidence asks for a ruling that the plaintiff is not entitled to recover, and the presiding judge refuses to make this ruling and submits the case to the jury, who return a verdict for the plaintiff, at the argument of an exception by the defendant to the refusal of the ruling, no question of pleading is open, and, if the plaintiff was entitled to go to the jury on any ground, it is not necessary to consider whether that ground was covered by the count on which the case was submitted to the jury.

LORING, J. The jury were warranted in finding the following to be the facts in the case. The plaintiff was a boy sixteen years of age. He had been in the defendant's employ some eight months. But it was not until three or four days before the day of the accident here complained of that he was sent to work in the part of the factory where this accident occurred. At that time he was told to act as assistant to one Mason, in stencilling boilers. On the day of the accident he had been stencilling boilers with Mason, in the shipping room on the third floor of the factory. When this work was done Mason went to the machine shop to get a new stencil, and told the plaintiff to get the elevator up and bring down to the first floor the trucks, paint pot, stencil and brushes. The elevator was an ordinary freight elevator, operated by a shipper rope running up through the several floors outside of but close to the elevator well. This shipper rope was on the driveway side of the elevator well, close to one of the two uprights on which the elevator ran. Boilers were stacked up on all four sides of the elevator well, with the exception of a narrow passage about two feet wide, left between the boilers on the Harvard Street side of the elevator. The Harvard Street side was at right angles to the shipper rope or driveway side. By reason of the boilers being stacked up on all four sides of the elevator well, this two foot passageway was the only means of getting to the shipper rope. The elevator well was equipped with hatch covers or doors attached to the floor in question by hinges. These doors covered the well hole when the elevator was above or below the floor; they were thrown up

against the uprights when the elevator went up, and fell back over the well hole when the elevator went down. When the plaintiff was told to take down his trucks, paint pot, stencil and brushes, he went through this passageway diagonally across the hatch covers or doors which covered the well hole at that time, pulled the shipper rope and turned to go back. At that time he slipped on some oil on the hatch cover on the shipper rope side of the elevator well, and fell. As he tried to get up the ascending elevator threw the covers up and this threw him against the upright. One leg was caught and jammed between the hatch cover and the upright and was not released until a fellow employee sent the elevator down.

The plaintiff testified and the jury could have found that he had used the elevator but three times before the accident, and that on each of those three times he had come up on the elevator and gone down on it before it left the floor, and therefore that before the day in question he had not seen the hatch covers when they were over the well hole.

The oil on which the plaintiff fell came from a leaky drip pan hung under the sheaves over which the wire rope ran by which the elevator was hung and was hauled up and down. This drip pan was described by one of the plaintiff's witnesses as follows: It was made by the defendant's employees and put up some six or eight months before the accident to the plaintiff. It was made out of a piece of tin turned up about one and one half inches on the four sides, and not soldered together at the corners; and it leaked when put up and had continued to leak ever since. This witness then testified "that the day before the accident he was up on the third floor and noticed there was more or less grease and dirt on the elevator doors, not thick, but just a skimming of oil, kind of coated over with dust that always lays around the shop. It wasn't thick stuff that you could see by looking at it, but was kind of grease with a dust covering"; that "the elevator door as he noticed it on his various trips to the third floor, always had oil and dirt on it." The oil spot on the door began about a foot and a half from the edge of the door, in the centre of the well, was from fifteen to eighteen inches wide, and ran down to the upright near the shipper rope, or within a foot or so of the upright.

The room in question on the third floor was well lighted, but the plaintiff testified " that it was dark in the elevator well and it was made so by the boilers all around the well."

The plaintiff also testified that " the elevator moved very slowly," and there was no testimony contradicting or modifying the fact so testified to.

The plaintiff also testified " that he never before had seen the doors down; that in going over the trap doors at the time of the accident he did not see any oil or foreign substance on the door, and no person in the defendant's employ had ever told him that there was any oil or foreign substance on the door."

The plaintiff went to the jury on a count based on negligence of the defendant in setting him to work in a dangerous place without notifying him of the dangers connected therewith. The presiding judge refused to direct the jury to return a verdict for the defendant. The jury returned a verdict for the plaintiff, and the case is here on an exception to that refusal, with an agreement that if the ruling was right judgment should be entered on the verdict, and that if the ruling was wrong judgment should be entered for the defendant.

The first question to be considered is whether on this evidence it could have been found that the accident was caused by a failure to perform a duty owed by the defendant to the plaintiff.

It is usually said that an employee assumes the risk of the obvious conditions of the building in which he accepts employment. That is true. It is more accurate however to say that an employer is under no duty to an employee to change the obvious condition of the building in which the employee accepts employment. It is pointed out in *McCafferty* v. *Lewando's French Dyeing & Cleansing Co.* 194 Mass. 412, that the principle on which this rule is founded is the principle on which the rule of *caveat emptor* is founded in a sale of property, and on which the rule is founded that a landlord is not liable for the ruinous condition of leased premises.

An application of the underlying principle which is almost if not quite an exact parallel is in case of the lease of a tenement including a right to use common passageways which remain in the control of the landlord. In such a case the landlord owes

the tenant the duty of keeping the common passageways in the condition in which they appeared to be at the beginning of the lease, as to which see *Andrews* v. *Williamson*, 193 Mass. 92; *Domenicis* v. *Fleisher*, 195 Mass. 281.

Were it not for the oil spot on the elevator covers or doors, it is hard to see why the plaintiff did not have a right to go to the jury for not repairing the drip pan. For although from the description of it given by the plaintiff's witnesses oil must have run out of it if there was any more than a very small quantity in it, yet it did not appear that there was oil in it all the time. It was entirely possible that oil would not be running out of it when the time came for the plaintiff to inspect the premises with a view to accepting employment in them. And if oil was not in fact dropping from the pan then, it would be hard to say as matter of law that the faulty construction of the pan was obvious to an employee making an inspection of the building with a view to deciding whether he would or would not work in it.

But we are of opinion that as matter of law on the evidence the oil spot on the cover was obvious and for that reason the defendant owed no duty for it or for the faulty construction of the drip pan which produced it.

This case does not come within *Dene* v. *Arnold Print Works*, 181 Mass. 560, *Murphy* v. *American Rubber Co.* 159 Mass. 266, and *Tinkham* v. *Sawyer*, 153 Mass. 485. There the plaintiff accepted work on or around machinery which meant that oil would of necessity be used where he worked, and that the floor would of necessity be oily. The room where this plaintiff went to work was in a loft used as a shipping room. The fact that the defendant ran a factory for making boilers was of no moment so far as the employment was concerned in the course of which the plaintiff was hurt.

The learned counsel for the plaintiff contend that they made out a case for the jury (1) because the plaintiff testified that " it was dark in the elevator well and it was made so by the boilers all around the well "; and (2) because another of his witnesses (Schofield by name) testified " that the day before the accident he was up on the third floor and noticed there was more or less grease and dirt on the elevator doors, not thick, but just a skimming of oil, kind of coated over with dust that always lays

around the shop. It was n't thick stuff that you could see by looking at it, but was kind of grease with a dust covering." This witness on cross-examination testified that " it was a light shop, and he could see the dirt and oil."

In determining how far the jury could go in making a finding based on this evidence, there are two things to be kept in mind. In the first place the plaintiff testified that the loft was as light as the court room except for the boilers, and that the boilers around the elevator were stacked up " four or five feet in height." No other witness testified that it was dark there. The question therefore is how far this testimony, standing alone, would justify the jury in making a finding.

The second thing which must be kept in mind in this connection is that no witness testified directly to the fact that the oil spot would not be seen, unless the testimony quoted above can be taken to be testimony to that effect.

We are of opinion that the plaintiff's testimony as to the darkness and Schofield's testimony as to the " skimming of oil," " kind of coated over with dust," did not warrant a finding that the oil spot was not obvious. As we have said, Schofield testified on cross-examination that " he could see the dirt and oil." Three witnesses only were put on the stand by the plaintiff's counsel. The third was a fellow employee who swept the floor in question every Saturday. The accident to the plaintiff happened on a Friday. He testified that " each Saturday . . . the elevator doors were covered with more or less oil and dirt. Sometimes there was more, sometimes less ; . . . that he had seen oil drop from above on to the elevator doors ; . . . that he picked up a small shovelful each time he swept."

Taking the evidence as a whole, we are of opinion that such an oil spot would be obvious on an inspection by an employee. It follows that the defendant could not be made liable by reason of oil on the hatch cover of the elevator.

The plaintiff's contention that this was the first time that he had seen the hatch covers down and that he did not in fact see the oil at that time is disposed of by *McCafferty* v. *Lewando's French Dyeing & Cleansing Co.* 194 Mass. 412. The question we are now considering is not whether the plaintiff was guilty of contributory negligence, but whether the defendant owed the

plaintiff any duty in respect to the oil on the hatch cover. This depends upon what would have been obvious on inspection, not on what the plaintiff in fact saw.

We are of opinion that the plaintiff was not entitled to go to the jury on any of these grounds.

But we are of opinion that on the other ground put forward by the learned counsel for the plaintiff he did have a right to go to the jury. The last ground taken by him is that it was negligent to pile up the boilers so as to leave the two foot passageway on the Harvard Street side as the only means of access to the shipper rope. His contention is that the boilers had been so piled up for three or four days, and that, as the defendant knew that they were so piled up and gave no orders to change them, the situation was the same as if he had originally given the order that they should be piled up as they were. He relies in this connection on the opinion in *Reed* v. *Boston & Albany Railroad,* 164 Mass. 129. Even if it would not be negligent to pile up the boilers so that an employee had to cross the hatch covers to get at the shipping rope under ordinary circumstances, we are of opinion that it might be found to be negligent to do so when the hatch cover door was slippery from oil.

The only question left is whether as matter of law the plaintiff was guilty of contributory negligence in crossing the hatch cover as he did.

The case at bar does not come within the class of cases where a plaintiff is precluded from recovering for the negligence of the defendant because he knew the facts, appreciated the risk and voluntarily exposed himself to the danger. *Goddard* v. *McIntosh,* 161 Mass. 253. *Larkin* v. *New York Central & Hudson River Railroad,* 166 Mass. 110. *Tenanty* v. *Boston Manuf. Co.* 170 Mass. 323. *Davis* v. *Forbes,* 171 Mass. 548. See also *Fitzgerald* v. *Connecticut River Paper Co.* 155 Mass. 155, 158, 162 ; and *Burgess* v. *Davis Sulphur Ore Co.* 165 Mass. 71, 73. The plaintiff in the case at bar testified that he did not in fact know that the floor was slippery, and that he did know "that the elevator moved very slowly." Under these circumstances he did not know of the risk which caused the accident, and the case comes within cases like *Hickey* v. *Waltham,* 159 Mass. 460. See *Wagner* v. *Boston Elevated Railway,* 188 Mass. 437, at p. 441; *Urquhart* v. *Smith*

*& Anthony Co.* 192 Mass. 257, 260 ; *Pomeroy* v. *Boston & North-ern Street Railway,* 193 Mass. 507 ; *Cooney* v. *Commonwealth Avenue Street Railway,* 196 Mass. 11 ; *Haggblom* v. *Winslow Brothers & Smith Co.* 198 Mass. 114 ; *O'Toole* v. *Pruyn, ante,* 126.

In deciding whether as matter of law the plaintiff was guilty of contributory negligence, the fact that he assumed the risk of the oil is not material. The defendant owed him no duty as to the oil because he must be taken to have assumed the risk. But the question whether the plaintiff was guilty of contributory negligence depends upon what he knew in fact.

It appears from the plaintiff's evidence that the boilers were stacked up around the elevator well, as they were at the time of the accident, on the day when he first went to work in the loft, and that they remained so throughout the time of his employment. Had the elevator well been permanently fenced in by barriers which were as matter of construction part of the building (as the elevator well was in fact fenced in by the boilers) the defendant would have owed no duty to the plaintiff by reason of the two foot passageway being the only access to the shipper rope. But the rule that an employee assumes the risk of what is obvious in the building in which he voluntarily consents to work does not apply to a dangerous condition caused by carrying on the work in a negligent way. An employer owes to his employees the duty of using due care to provide his employees with a safe place in which to work. It is for a failure to perform that duty that the plaintiff had a right to go to the jury in the case at bar. See in this connection *Boucher* v. *Robeson Mills,* 182 Mass. 500, 502 ; *Chambers* v. *Wampanoag Mills,* 189 Mass. 529, 534.

It is not necessary to consider whether it was open to the plaintiff, under the count on which he went to the jury, to make the contention which we have adopted. No question of pleading seems to have been raised at the trial. The ruling asked for by the defendant was " that the plaintiff was not entitled to recover," not that he was not entitled to recover on the evidence and pleadings. The agreement of parties was " that if his [the judge's] ruling was right, judgment should be entered on the verdict." We are of opinion that apart from the

pleadings the ruling was right, and, as no question of pleading was raised, the entry should be

*Exceptions overruled.*

*J. Lowell & J. A. Lowell,* for the defendant.
*W. I. Badger & G. C. Dickson,* for the plaintiff.