JAMES E. BAGLEY *vs.* WONDERLAND COMPANY & others.

Suffolk.   January 19, 1910. — February 24, 1910.

Present: KNOWLTON, C. J., HAMMOND, BRALEY, SHELDON, & RUGG, JJ.

*Negligence,* Employer's liability.   *Partnership.   Evidence,* Admitted without objection.   *Joint Tortfeasors.*

In an action by a foreman plumber against his employers for personal injuries, there was evidence that between daylight and dark on a cloudy night in June the plaintiff's employers sent him to a pump house to try the valves which controlled the water supplied for a chute, and to see what the matter was which prevented the water from flowing down the chute as it should; that the valves were turned from a window in the pump house and to reach this window it was necessary to pass along a passageway inside the pump house about eighteen inches wide between the side of the pump house and unguarded cog wheels in motion; that the pump house had been built and the machinery installed in it after the plaintiff was employed by the defendants; that he had not been to the place for fifteen days and never before had seen the pump in operation nor had had anything to do with opening or closing the valves; that there were certain glass oil cups on the machinery from which the oil dripped slowly on the machinery when it was in motion, that about a week before the accident one of these cups on the crank shaft, holding about a gill of oil, was cracked from top to bottom and had a piece nicked out of it; and that the oil from this cup ran down upon the floor in such quantities as to be tracked about; that notice of this condition had been given to the defendants, but that the cup was not changed before the accident; that the plaintiff, coming from the greater light out of doors and walking in the dark toward the window to regulate the valves, slipped by reason of the oil on the floor and his arm was caught on the revolving cog wheels and was mangled; that within a few minutes after the accident there was oil on the floor for the width of the passageway and for a length of four or five feet; that the passageway "was pretty well covered with oil" and there were marks as if a man had slipped; that oil was dripping on the floor from the cracked cup and that no oil came upon the floor from any other source.   *Held,* that the question whether the plaintiff was in the exercise of due care was for the jury, and that it was for the jury to say whether in the dusk he could have seen the condition of the floor or should have procured more light before proceeding toward the window.   *Held, also,* that the plaintiff did not assume the risk of such an injury by his contract of employment, because the broken oil cup and the slippery floor had come into existence after his contract of employment was made and he did not in fact know of the danger which caused his injury.

A workman can be barred on the ground of assumption of risk from recovery against his employer for injuries resulting from perils which have been created

since the making of his contract of employment only when he voluntarily has continued in the service after appreciating the nature and extent of the added exposure to danger.

In an action by a foreman plumber, employed by a firm consisting of two members who were performing certain work under a contract with a corporation conducting an amusement park, against his employers and the corporation, for injuries received by slipping upon an oily floor in the passageway of a pump house so that his arm was caught by the revolving cog wheels of the pumping machinery, when he had been sent to the pump house by one of his employers and also by an agent of the defendant corporation in order to try the valves and to see what the trouble was that prevented the water from flowing down a chute which was operated by the defendant corporation, it appeared that the slippery condition of the floor, of which the plaintiff had no previous knowledge, was due to the leaking of oil from a cracked and broken glass oil cup on the crank shaft of the pump, that the defendant corporation had used this cracked and leaky oil cup for several days in such a place that a large part of its contents continually flowed upon the floor of the passageway of the pump house near the machinery, where it was or might become necessary for others than those in charge of the machinery to pass, that, although the plaintiff's employers did not own the pump house nor operate the machinery, yet it might have been found to have been a part of their work to regulate the flow of the water down the chutes and to test the valves, and in order to do this it was necessary to go to the place where the plaintiff was injured. There was evidence tending to show that each of the plaintiff's employers knew of the leaking oil cup several days before the accident, and that one of them had promised to remedy it. *Held*, that there was evidence of negligence not only on the part of the defendant corporation but also on the part of the plaintiff's employers, who might have been found to be negligent in setting the plaintiff at work in a dangerous place of which he was ignorant without giving him any warning, and that, even if they had no right to change the oil cup, they had a knowledge of the danger which imposed upon them the duty to warn the plaintiff of its existence.

In an action by a foreman plumber for personal injuries against his two employers, alleging that they were copartners doing business under a firm name and in that name had a contract with another defendant, a corporation, for doing certain work, the plaintiff's employers raised the objection that there was no evidence of the existence of a copartnership between them. Their names were respectively A. and S. It was not questioned that a person or persons doing business as the A. and S. Construction Company had a contract with the defendant corporation for doing the work upon which the plaintiff was employed. It appeared that both A. and S. were upon the premises every day, and that A. had referred to S. as his partner, that S. hired men, gave directions indicative of a master's power and, when notified of the defective appliance which was the cause of the plaintiff's injury, " said he would have it seen to." A printed letter head used by A. bore the names of both A. and S. Several witnesses in testifying referred to " A. and S." as a firm, and this testimony remained in evidence without objection. *Held*, that there was evidence sufficient to warrant a finding of the existence of the copartnership.

Evidence, which would have been excluded as incompetent upon objection, if it is admitted and remains in the case without objection, should be given its probative force.

Wrongdoers acting independently, whose tortious acts or omissions concurrently contribute to the injury of a person, are liable to such person jointly.

TORT against Harry B. Aldrich and Edward L. Shea, alleged to be copartners doing business under the name of the Aldrich and Shea Construction Company, and against the Wonderland Company, a corporation organized under the laws of this Commonwealth and having a usual place of business at Revere, for personal injuries suffered by the plaintiff on June 13, 1906, while in the employ of the defendants Aldrich and Shea in connection with a contract made by them with the defendant corporation. Writ dated August 21, 1906.

The plaintiff's declaration as amended was as follows:

"First Count: And the plaintiff says that on June 13, 1906, the defendant the Wonderland Company was the owner and occupant of certain premises situated in the Town of Revere, called Wonderland, where the said Wonderland Company conducted certain amusements, that on said premises the said Wonderland Company maintained certain structures called ' chutes,' in which water flowed which was forced through certain pipes by means of a pumping machine; that said pumping machine was in a building called a pump house, and between the pumping machine and side of the pump house was a passageway about fifteen inches wide consisting of boards or planks; that said pumping machine and pump house were owned by the Wonderland Company and were under its care and control; that on said date the plaintiff was in the employ of the defendants Aldrich and Shea, who were contractors and as such were doing certain work for the Wonderland Company at Wonderland Park; that while the plaintiff was thus employed and was in the exercise of due care, by reason of the negligence of the Wonderland Company in maintaining said pumping machine in a dangerous and defective condition and said passageway in a dangerous and slippery condition and by reason of the negligence of the defendants, Aldrich and Shea in not providing a safe place for the plaintiff to work in and in setting the plaintiff to work in an unsafe place without informing him of the dangers to which he was exposed, said dangers being known to the defendants, but unknown to the plaintiff, the plaintiff's arm was caught in said machine and left in such condition that it had to be amputated and he was put to great expense for nursing, medicine, and medical attendance, was deprived of his wages

and earnings to a large amount and his capacity to labor was permanently impaired."

There was a second count under the employers' liability act, which the plaintiff waived at the trial.

In the Superior Court the case was tried before *Fessenden*, J. At the close of the evidence the defendants asked for twelve rulings. One of them, numbered 11, the judge gave as an instruction to the jury as follows: "Upon the evidence in this case, the place where the plaintiff was injured was not a place furnished by the defendants Aldrich and Shea for their employees to work in."

The fourth, sixth and tenth requests were waived by the defendants because they related to recovery on the second count of the plaintiff's amended declaration which he had waived.

The other rulings requested by the defendants were as follows:

"1. Upon all the evidence and pleadings in this case, the plaintiff is not entitled to recover against the defendant Wonderland Company.

"2. Upon all the evidence and pleadings in this case, the plaintiff is not entitled to recover against the defendants Aldrich and Shea.

"3. Upon all the evidence the plaintiff is not entitled to recover against the Wonderland Company upon the first count of his declaration."

"5. Upon all the evidence the plaintiff is not entitled to recover against Aldrich and Shea upon the first count of his declaration."

"7. Upon the evidence and pleadings in this case the plaintiff is not entitled to maintain his action against the defendants jointly.

"8. Upon all the evidence and pleadings in this case, the plaintiff is not entitled to maintain his action against the defendants jointly and severally.

"9. There is no sufficient evidence in this case of a partnership existing between the defendants Harry B. Aldrich and Edward L. Shea at the time the plaintiff was injured, and the plaintiff is not entitled to recover against them as partners in business."

" 12. There is no sufficient evidence in this case that the defendant Wonderland Company furnished the place where the plaintiff was injured for the use of this plaintiff in the doing of the thing which he was engaged in doing at the time the accident happened."

The judge refused to make any of these rulings and submitted the case to the jury on the first count of the plaintiff's amended declaration with other instructions.

The jury returned a general verdict for the plaintiff against both defendants in the sum of $8,500; and the defendants alleged exceptions.

*M. O. Garner*, for the defendants.

*W. J. Barry & P. M. Keating*, for the plaintiff, were not called upon.

RUGG, J.   This is an action of tort to recover damages for personal injury.   The plaintiff was a foreman plumber and piper in the employ of the defendants Aldrich and Shea, who were performing certain work under contract for or upon the estate of the other defendant, which owned and operated an amusement park.   The injuries were sustained in a small building called the pump house, which contained a pump, by which water was forced to the top of a chute in the park down which it flowed, and contained also unguarded cog wheels and other machinery connected with the pump.   The supply of water was through pipes regulated by valves just outside, and turned from, a window in the pump house, all of which had been built and installed after the plaintiff entered the employment and which had been in use about a fortnight before the accident.   In order to reach that window it was necessary to walk partly around the pump and in a passageway about eighteen inches wide between the side of the building and the cog wheels.   There was evidence which, given its full probatory force, would warrant the jury in finding that between daylight and dark of a cloudy June night the plaintiff was directed both by the defendant Aldrich and by an agent of the Wonderland Company to go to the pump house and try the valves and see what the trouble was with them, as the water was not flowing down the chute as it should; that he had not been to the place for fifteen days, and had never before seen the pump in operation, nor had anything

to do with opening or closing the valves; that on the evening in question inside the pump house "it was dark" and that the light was not such that he could see the appearance of the floor; that he did not know that there was oil on any part of the floor; that while walking toward the window to regulate the valves the plaintiff slipped by reason of oil on the floor, and his arm was caught on the revolving cog wheels and was mangled; that a glass oil cup holding about a gill on the crank shaft of the pump was cracked from top to bottom and had a piece nicked out of it about a week before the accident, and that from this cup oil ran upon the floor in such quantities as to be tracked about; that oil would last in this cup about ten minutes, and in the other oil cups on the machinery an hour and a half or more; that oil was constantly required in that cup when the machinery was in motion; that notice of this condition was given to the Wonderland Company and to Aldrich and Shea, the other defendants, but that the cup was not changed before the accident; that within a few minutes after the accident there was oil upon the floor, the width of the passageway, for a length of four or five feet; that it "was pretty well covered with oil" and there were marks as if a man had slipped, and that oil was dripping on the floor from the cracked cup, near the passageway; that no oil came upon the floor from any other source; that the pump had been operated for several days before the accident by employees of the Wonderland Company. Although there was other evidence which would have amply supported other views of the facts, especially as to the degree of light in the pump house, we must, after a verdict for the plaintiff, discuss the exceptions on the footing of inferences most favorable to the plaintiff.

1. There was sufficient evidence to support a finding that the plaintiff was in the exercise of due care. He was going into a building with whose general construction and arrangement of machinery he was familiar. Even though it may have been somewhat dark, the conditions as he had known them might reasonably have been assumed to remain permanent, in view of the uses of the building, and although the floor perhaps could not have been expected to be wholly free from oil, he was not as matter of law bound to anticipate and guard against

such slipperiness as would result from the quantities of oil escaping from a broken cup. The situation is quite different from that of a man entering in the dark a strange place. Whether in the dusk he could have seen the condition of the floor or should have procured more light before proceeding were under the circumstances properly left to the jury. *Hamilton* v. *Taylor*, 195 Mass. 68. It is to be remembered that he had come from the greater light of out of doors, and that his objective point was the valves, which were also outside the building and to be reached through a window.

2. It cannot be said as matter of law that the plaintiff assumed the risk of injury resulting from the oily floor. The doctrine of contractual assumption of risk does not apply, for the reason that the condition, both of the broken oil cup and the lubricated floor, had come into existence since his contract of employment. He did not in fact know of the danger which caused his injury. The workman can be barred of recovery for injuries resulting from perils arising during the course of employment only when he realizes their nature and extent with full comprehension of the danger, and continues in the service with the added exposure voluntarily and intelligently. *O'Toole* v. *Pruyn*, 201 Mass. 126.

3. Negligence of the Wonderland Company may well have been predicated upon its use for several days of a cracked and leaky oil cup under such circumstances that a large part of its contents continually flowed upon the floor of a passageway, where it was necessary or might become necessary for others than those in charge of the machinery to pass. Although the defendants Aldrich and Shea did not own the building or operate the machinery, yet it might have been found to have been a part of their work to regulate the flow of water down the chutes and to test the valves. In order to do this, it was necessary to go to the place where the plaintiff was injured. There was evidence tending to show that each of them knew of the leaking oil cup several days before the accident, and one of them had promised to remedy it. These circumstances may have been found to be enough to charge them with negligence in setting the plaintiff at work in a dangerous place of which he was ignorant without any warning. If they had no right to change the oil cup, they had knowledge of a danger and the duty to warn

rested on them. *Haggblom* v. *Winslow Brothers & Smith Co.* 198 Mass. 114. *La Fortune* v. *Jolly*, 167 Mass. 170. *Morena* v. *Winston*, 194 Mass. 378. *Crimmins* v. *Booth*, 202 Mass. 17. *Shannon* v. *Willard*, 201 Mass. 377, upon which the defendants rely, is distinguishable in that the slipperiness was there plainly obvious.

4. The principle that the cause of the injury is left a conjecture, as in *Childs* v. *American Express Co.* 197 Mass. 337, is invoked in behalf of all the defendants, because there is faint evidence that mud was tracked into the pump room from outside. But testimony to this effect was slight in itself, and most of the witnesses who described the surface of the floor where the plaintiff fell made no mention of anything aside from the oil. The decided weight of evidence pointed to that as the cause of his injury.

5. It is urged that there was no evidence of a copartnership between the defendants Aldrich and Shea. It was not questioned that a person or persons doing business as the Aldrich and Shea Construction Company had a contract for doing the work, upon which the plaintiff was engaged. Both Aldrich and Shea were upon the premises every day, and the former had referred to the latter as his partner. This statement standing alone was evidence only against the one who made it. *Rosseau* v. *Deschenes*, 203 Mass. 261. Shea hired men, gave directions indicative of a master's power, and when notified of the defective oil cup " said he would have it seen to." Several witnesses in testifying referred without objection to " Aldrich & Shea " as a firm. Though this may not have been competent evidence, yet, being in, it was entitled to its probative force. *Hubbard* v. *Allyn*, 200 Mass. 166, 171. A printed letter head used by Aldrich bore the names of both Shea and Aldrich. These circumstances taken together were sufficient to support a finding of a copartnership. *Smith* v. *Paul Boyton Co.* 176 Mass. 217. *Norris* v. *Anthony*, 193 Mass. 225. *Rosseau* v. *Deschenes*, 203 Mass. 261. *Case* v. *Baldwin*, 136 Mass. 90. *McMurtrie* v. *Guiler*, 183 Mass. 451. *Gay* v. *Ray*, 189 Mass. 112. *Ashley* v. *Dowling*, 203 Mass. 311. *Sumner* v. *Gardiner*, 184 Mass. 433.

6. It is contended that the defendants cannot be held jointly liable. Wrongdoers acting independently, whose tortious con-

duct concurrently contributes to the injury of a person, may be held jointly liable. *Feneff* v. *Boston & Maine Railroad,* 196 Mass. 575, 581. *Lindenbaum* v. *New York, New Haven, & Hartford Railroad,* 197 Mass. 314, 318.

Exceptions to evidence have not been argued, and are treated as waived.

*Exceptions overruled.*