WILLIAM J. MITCHELL *vs.* WILLIAM L. MORRISON COMPANY.

Suffolk.   November 12, 1913. — February 26, 1914.

Present: RUGG, C. J., HAMMOND, LORING, BRALEY, & DE COURCY, JJ.

*Negligence,* Employer's liability.   *Notice.*

The attorney for a carpenter who was injured while employed by a corporation in the construction of a certain building sent to the carpenter's employer, within the time specified in St. 1909, c. 514, § 132, a letter reading in substance as follows: "On or about January 8, last, my client . . . while employed upon the building now being erected by your company at about the location above given [in the address of the letter], received severe injuries by falling from said building to the ground, which fall was caused by the negligence of yourself, your agents or servants in not properly bracing or supporting a brace or landing upon which he was obliged to depend while engaged upon the work in hand. Kindly let me hear from you on this matter." *Held,* that the letter satisfied the requirements of a notice to the employer under St. 1909, c. 514, § 132.

At the trial of an action brought under St. 1909, c. 514, § 127, cl. 2, by an experienced carpenter against his employer for injuries, caused while the plaintiff was assisting in the construction of a form in which concrete for the wall of a building was to be placed to harden, and alleged to have been due to negligence of the superintendent in charge of the work, there was evidence tending to show the following facts: The form was made of boards nailed to upright joists, and was a long, narrow box-like receptacle. To prevent the walls of the box from spreading apart under the pressure of the concrete, other joists, called "rangers," were nailed horizontally in rows on the sides of the form, and joined by wires running through the form. These rows of rangers were about two feet apart. After the concrete in such forms had hardened, the wires customarily were cut and the form taken down. It was customary for the employees to stand upon the rangers in doing their work. The plaintiff, while doing work which the superintendent directed him to do, was standing upon a ranger when it twisted around, tore loose from the nails which held it, and he fell. That ranger had been put in place a day or two before by a fellow workman of the plaintiff who, before he had finished his work, had been called away by the superintendent and then had told the superintendent that the ranger was not properly nailed

and was not safe. The plaintiff was given no warning by the superintendent of the condition of the ranger and did not examine it before he stood upon it. It apparently was safe. *Held,* that there was evidence of due care of the plaintiff and of negligence of the superintendent, and that the plaintiff had not assumed the risk of the injury as a matter of law.

TORT for personal injuries received by the plaintiff, as described in the opinion, while in the defendant's employ as a carpenter. Writ dated September 1, 1911.

In the Superior Court the case was tried before *Stevens, J.,* and was submitted to the jury upon a count of the declaration under St. 1909, c. 514, § 127, cl. 2, alleging negligence of a superintendent of the defendant.

The plaintiff when injured was standing on a "ranger" of a form for making concrete. The form was described in the bill of exceptions as "made of boards nailed to upright joists that formed a narrow receptacle into which the concrete was poured to remain until hardened. The form was to be removed when the concrete had hardened sufficiently and the concrete inside would then be a permanent wall of the garage. In order to hold this form in the desired shape and prevent it from spreading under the pressure of the concrete, 'rangers,' so called, were used. These rangers were joists usually three inches by four inches and ten or twelve feet long, which were nailed horizontally to the uprights upon the form. Since the purpose of the rangers was to prevent spreading, they were nailed to the form in pairs, that is, one on the" side of the form that formed the exterior of the building, and one on the side that formed the interior, opposite to each other. "These pairs of rangers were connected by wires which ran through the boards forming the sides of the form and then through the concrete. Said wires were cut off and left in the concrete when it had hardened and the form was removed. These pairs of rangers ran up the form and were about two feet apart. The ends of the form were also boarded up to prevent the concrete from running out. The form was then, when completed, like a long narrow case or box with but one open end, to wit, at the top, at which point the concrete was poured in."

Other material facts are stated in the opinion.

At the close of the evidence, the defendant asked for rulings

in substance that, on all the evidence, the plaintiff could not recover, that there was no evidence of his due care, and that he had assumed the risk of the injury. The rulings were refused. The jury found for the plaintiff in the sum of $1,000; and the defendant alleged exceptions.

*H. R. Bygrave*, (*W. Rand* with him,) for the defendant.

*P. J. Donaghue*, ( *F. W. McGowan* with him,) for the plaintiff.

Rugg, C. J. The plaintiff seeks to recover in this action under the employers' liability act for injuries received by him while working for the defendant. A communication was sent by the plaintiff's attorney, within the statutory time, to the defendant, in these words: "On or about January 8, last, my client, William Mitchell, while employed upon the building now being erected by your company at about the location above given, received severe injuries by falling from said building to the ground, which fall was caused by the negligence of yourself, your agents or servants in not properly bracing or supporting a brace or landing upon which he was obliged to depend while engaged upon the work in hand. Kindly let me hear from you on this matter." This notice was sufficient. *Meniz* v. *Quissett Mill, post,* 552. For the reasons there stated, it is distinguishable from the one held to be a mere letter in *Grebenstein* v. *Stone & Webster Engineering Co.* 209 Mass. 196, and in *McNamara* v. *Boston & Maine Railroad, ante,* 506.

The plaintiff was an experienced carpenter. The work about which he was employed was the construction of a form for concrete for the wall of a building. In order to hold the form in shape and to prevent it from spreading under the pressure of the concrete, joists called "rangers" were nailed horizontally along the sides to the uprights of the form. There remained only the nailing of a board at the top of one end of the form in order to complete it. The evidence was conflicting as to the other circumstances, but the jury might have found that the plaintiff was directed by one Morrison, the superintendent of the defendant, to complete the form, and that in compliance with this order he rested on one of the "rangers," which in a moment "canted, that is, it twisted around, tearing away from the nails which held it," whereby the plaintiff was injured. It was customary for the men to stand upon the " rangers " in doing their work. The

plaintiff made no examination as to the safety of the one which gave way, to see whether it was safe before going upon it. A fellow workman testified that a day or two before the accident he was nailing the "ranger" which gave way, when he was called away by Morrison, to whom he said that the "ranger" was not properly nailed and was not safe, but who directed him to do other work, saying, "We will look after that later."

If this evidence was believed, it was sufficient to warrant a finding of due care on the part of the plaintiff. He could not be required as matter of law to examine every step of the "rangers" before going to the top of the high form to do the comparatively trifling amount of work which remained. Having been sent to do this without warning, it might have been found reasonable for him to assume that a form which appeared to be complete and ready to use up to the point where he was sent, was safe. *White* v. *Newborg,* 208 Mass. 279.

It cannot be said as matter of law that he assumed the risk of the employment. The hazard of being sent into a place which appeared safe, but was in fact dangerous, was not one which he assumed by the contract of employment. *O'Toole* v. *Pruyn,* 201 Mass. 126. The weakness of the "ranger" was not so obvious as to require the inference of want of care in failing to observe it on the part of the plaintiff. *Bagley* v. *Wonderland Co.* 205 Mass. 238. *Hogan* v. *Pennock, ante,* 274. The peril might have been found not to have been incident to the kind of work which the plaintiff was called upon to do, nor was it so transitory as to relieve the defendant of responsibility.

Cases like *Boisvert* v. *Ward,* 199 Mass. 594, and *Gainey* v. *Peabody,* 213 Mass. 229, are not controlling under these circumstances. It might have been found that the defendant's superintendent actually knew of the insecure fastening of the "ranger" and sent the plaintiff upon it without warning. This was enough to warrant a finding of negligence on his part. *Haley* v. *Lombard,* 207 Mass. 545. *Johnson* v. *Otis Elevator Co.* 211 Mass. 504.

*Exceptions overruled.*