EDWIN S. VAN DYKE & another[1] vs. FRANK E. BIXBY, JR. & others.[2]

Essex.   October 7, 1982. — April 8, 1983.

Present: WILKINS, LIACOS, NOLAN, & O'CONNOR, JJ.

*Negligence,* Medical malpractice. *Medical Malpractice,* Tribunal. *Partnership,* Physicians, What constitutes. *Evidence,* Determination of medical malpractice tribunal.

In an action based on medical malpractice and loss of consortium arising from medical treatment by a physician who had died before the action was commenced, the jury were warranted in finding that the defendant physicians were, at relevant times, partners of the physician who performed the treatment complained of. [666]

Where an issue at the trial of an action for medical malpractice and loss of consortium was the existence, at relevant times, of a partnership between the defendant physicians and a physician, since deceased, who performed the treatment complained of, the judge properly admitted in evidence a certificate filed with a city clerk pursuant to G. L. c. 110, § 5, stating the name under which the deceased physician and five of the defendant physicians were conducting business [667]; the endorsement page of a policy of professional liability insurance identifying the defendants and the deceased physician as "co-partners" [667]; a billing statement showing that the defendants and the deceased physician were professionally associated [667]; and, with appropriate jury instructions, the answers of individual defendants to interrogatories, to the effect that a partnership existed [668].

Evidence at the trial of an action for medical malpractice warranted the jury in concluding that a physician, in failing to remove a draining device from a patient's body after surgery, and in his treatment of the

---

[1] Kathleen Van Dyke, whose claim was based on loss of consortium.

[2] Thomas S. Risley, Mayo Johnson, Barnard P. Todd, Gilbert A. Norwood, Burnham E. Lamkins, Philip D. Herrick, John Garry, and Henry J. Ramini.   The Beverly Hospital was named as a defendant, but before trial a stipulation of dismissal was entered as to it.

patient after postoperative complications developed, failed to conform to the requirements of accepted medical practice.  [668-669]

In a medical malpractice action tried before this court's decision in *Beeler* v. *Downey*, 387 Mass. 609, 618 (1982), no prejudice to the defendants resulted from the admission in evidence, with cautionary instructions, of the determination of a medical malpractice tribunal.  [669-670]

Evidence at the trial of a medical malpractice action warranted the jury in concluding that a certain physician had an obligation to oversee the work of a doctor who was a surgical resident in a hospital, and would be liable for any negligence by the resident.  [670]


CIVIL ACTION commenced in the Superior Court Department on January 25, 1980.

The case was tried before *Brady, J.*

The Supreme Judicial Court granted a request for direct appellate review.

*Raymond J. Kenney, Jr.,* for the defendants.

*Jan Richard Schlichtmann* (*Kevin P. Conway* with him) for the plaintiffs.

WILKINS, J.  The plaintiffs recovered judgments against the defendants solely on the theory that as partners of Richard E. Alt (Dr. Alt), a physician who died in 1975, they were liable for Dr. Alt's negligent treatment of the plaintiff Edwin S. Van Dyke (Van Dyke).  In this appeal the defendants argue that the admissible evidence did not warrant a finding that a partnership existed and that, if a partnership did exist, there was no evidence warranting a finding that Dr. Alt failed, during the period of the partnership, to treat Van Dyke in conformity with the requirements of accepted medical practice.  Thus, they argue that their motions for a directed verdict and for judgment notwithstanding the verdict should have been allowed.  They further challenge the judge's failure to give certain requested jury instructions and the admission in evidence of the determination of the medical malpractice tribunal convened under G. L. c. 231, § 60B.  They also argue that their motion for a new trial should have been allowed.  We affirm the judgments and the order denying the defendants' motion for a new trial.

We summarize the facts that the jury could have found on the evidence, leaving to subsequent portions of the opinion more detailed consideration of evidence bearing on the partnership issue and on Dr. Alt's duty of care. In 1959, Dr. Alt practiced medicine with other physicians in Beverly in an association known as Peer P. Johnson et als. In May of that year, Dr. Alt operated on Van Dyke at the Beverly Hospital for cancer of the rectum, performing a colostomy. During the operation, Dr. Alt inserted two drains, called Penrose drains, in the surgical site. The hospital record does not show whether the drains were pinned or stitched to prevent them from slipping into the wound, although it does indicate that a surgical resident removed them. Van Dyke's recovery was uneventful.

In 1962, Peer P. Johnson and others (including Dr. Alt) established a partnership under the name of The Johnson Clinic. Some of the defendants who had been associated with Peer P. Johnson et als. were told that they were "junior or limited partners." Other defendants joined the association in the 1960's and became junior partners. Peer P. Johnson died in 1963, but the partnership continued under the same name.

In July, 1969, Van Dyke returned to Dr. Alt complaining of severe pain, and Dr. Alt performed two operations — one for a twisted bowel and one for adhesions. A single Penrose drain was inserted in Van Dyke during one of these operations. About two months later Van Dyke came back to Dr. Alt with a large mass in his perineum, an abscess that Dr. Alt drained. During the balance of 1969, Van Dyke saw Dr. Alt several times. The drainage persisted. Dr. Alt tried to cauterize the abscess, using a silver nitrate stick. He told Van Dyke that these problems often take a long time in going away. On January 1, 1970, the partnership was ended, and a corporation succeeded it. Van Dyke saw Dr. Alt several times during the first half of 1970.

The abscess continued to drain during the next several years, causing a substantial unpleasant odor and considerable discomfort. In 1978, another physician performed a

sinogram, and thereafter Van Dyke underwent surgery at the Amesbury Hospital. The perineal sinus was explored, part of Van Dyke's coccyx was removed, and a Penrose drain was found above the sinus tract and in front of the coccyx.[3]

1. We start with the question whether the jury were warranted in finding that the defendants were partners of Dr. Alt because, if not, they could not be held liable for his negligent conduct. The defendants concede, by implication, that, if certain challenged evidence was admissible, the jury would have been warranted in finding that a partnership involving Dr. Alt and the defendants existed between 1962 and the end of 1969. As to the period prior to 1962, and particularly as to 1959 when the Penrose drain may have been negligently left in Van Dyke, the evidence to support the existence of a partnership, for whose liabilities the defendants, as successor partners, would be responsible to the extent of partnership property, was considerably weaker. G. L. c. 108A, § 17. The defendants did not, however, request an instruction that they could not be liable for any negligent acts of Dr. Alt during 1959.[4] They did request an instruction that there was no evidence of a partnership between Dr. Peer Johnson, Dr. Alt, and any other physician prior to 1962. That instruction was properly denied because there was some evidence tending to prove that a partnership existed before 1962.[5]

---

[3] This action was commenced on January 25, 1980. The jury were instructed that they could return verdicts for the plaintiffs only if they found that the action was brought within three years of the time that Van Dyke learned or reasonably should have learned that he had been harmed by Dr. Alt's conduct. See *Franklin* v. *Albert*, 381 Mass. 611, 612 (1980). No separate point was made as to Mrs. Van Dyke's knowledge.

[4] They requested an instruction that they were not partners of Dr. Alt in 1959. But that fact would not absolve them from liability if, at various later dates, they joined a partnership that had been continuously in existence since 1959.

[5] Mrs. Van Dyke testified that she received joint billing statements. One of the defendants, who joined the clinic in 1953, testified that it could have been a partnership in the earlier years.

We turn our attention then to the defendants' challenges to the admission of evidence offered to show that The Johnson Clinic was a partnership from 1962 through 1969.[6] The judge properly admitted a certificate filed with the city clerk in Beverly in 1962, pursuant to G. L. c. 110, § 5, stating that ten doctors, all of whom signed the certificate, were conducting a business in Beverly under the name THE JOHNSON CLINIC. Five of the defendants signed the certificate, as well as Dr. Peer P. Johnson and Dr. Alt. The certificate was relevant, although certainly not conclusive, on the question whether a partnership had been formed. A person conducting business under any title other than his real name, "whether individually or as a partnership," must file such a certificate. G. L. c. 110, § 5, as amended by St. 1967, c. 429.

The judge properly admitted, solely on the issue of the existence of a partnership, the endorsement page only of a professional liability insurance policy stating that the defendants and Dr. Alt were insured "individually and as co-partners dba Johnson Clinic." The fact that the defendants insured their liability as partners is some evidence that a partnership existed. *Bachand* v. *Vidal*, 328 Mass. 97, 102 (1951).

An October 31, 1969, billing statement of The Johnson Clinic was properly admitted. It showed that the defendants, Dr. Alt, and other physicians were associated with the clinic and stated that all checks should be made payable to The Johnson Clinic. It was relevant on the question whether the defendants were associated with Dr. Alt in the business at that time. See *Mersick* v. *Bilafsky*, 205 Mass. 488, 492 (1910); *Bagley* v. *Wonderland Co.*, 205 Mass. 238, 245 (1910).

---

[6] The partnership was succeeded by a corporation on January 1, 1970. The judge instructed the jury not to consider the acts of Dr. Alt after January 1, 1970, on the issue of partnership. From the judge's charge, it is reasonably clear that the jury were informed that the defendants could be liable only for negligent acts or omissions of Dr. Alt during the time a partnership existed.

The statements of certain defendants in answers to interrogatories that they were partners and the testimony of two of those defendants that they were partners were admissible as tending to prove that they were partners. That evidence was admissible only against the defendant who made the statements. See *Bagley* v. *Wonderland Co., supra.* It was not binding on such a defendant, but it did show his state of mind concerning his relationship with Dr. Alt. Such questions do involve a legal conclusion. One might believe that he was a partner when, as a matter of law, he was not. The jury, therefore, must be made aware, as they were in this case through the judge's charge, that the partnership question must be determined on all the evidence.

2. There was evidence to warrant a finding that during the period when a partnership existed Dr. Alt was negligent in his treatment or failure to treat Van Dyke. The motions for a directed verdict and for judgment notwithstanding the verdict were, therefore, properly denied. The jury could have found that Dr. Alt failed to remove the Penrose drain from Van Dyke after the 1969 operation. They could have found that, in his treatment of Van Dyke in 1969 after the drainage persisted, Dr. Alt failed to conform to accepted medical practice because he delayed taking substantial affirmative measures to investigate and to correct the cause of the condition. Many questions the plaintiffs' counsel asked physician witnesses were not phrased in appropriate terms to test Dr. Alt's adherence to accepted medical practice during the time when a partnership may have existed, but enough of the questions were adequately phrased so as to permit the jury to conclude on the evidence that in 1969 Dr. Alt violated his duty of care.[7]

---

[7] Certain questions asked of the plaintiffs' expert were designed to establish what surgeons do ("Are there certain standards of practice that a surgeon follows . . .?" "Are there certain normal procedures that a surgeon follows . . .?"), and others were framed in terms of fault not specifically related to Dr. Alt's conduct. Although not necessarily objectionable, such questions do not establish that a physician failed to adhere to the proper standard of care and, therefore, such questions do not elicit

It was hardly debatable that the retained Penrose drain was placed in Van Dyke as part of an operative procedure conducted by Dr. Alt. There was little doubt that something medically inappropriate occurred. The only issue in that respect was whether Dr. Alt was responsible legally for what happened. The jury were warranted in finding that he was. Dr. Alt might have negligently left the drain in Van Dyke after the 1969 operation. As to the treatment of Van Dyke after the 1969 operations when he continued under the care of Dr. Alt because of substantial drainage from an abscess, there was conflicting expert testimony whether Dr. Alt waited too long in undertaking or urging a substantial investigation of the cause of the problem. We think the jury were warranted on the evidence in concluding that Dr. Alt was negligent during 1969 in his postoperative treatment of the persistent drainage. The issue is complicated by the fact that the partnership terminated at the end of 1969, and Dr. Alt continued to see Van Dyke during the first half of 1970. We conclude, however, that the evidence warranted a finding that Dr. Alt's treatment of Van Dyke in 1969 failed to conform to the requirements of accepted medical practice.

3. The defendants challenge the admission of the finding of the medical malpractice tribunal that the evidence offered to the tribunal, if substantiated, was sufficient to raise a legitimate question of liability appropriate for judicial inquiry and was not merely an unfortunate medical result. In *Beeler* v. *Downey,* 387 Mass. 609, 618 (1982), we concluded that the determination of a medical malpractice tribunal, appointed under G. L. c. 231, § 60B, should not be admitted in evidence. Here, however, we see no prejudicial error because the judge gave a cautionary instruction to the jury, in a form the defendants proposed, concerning the limited significance of such a determination. Although we recognize that the defendants did not waive their objection to the

---

evidence justifying submission of a case to the jury where expert testimony is required to make a jury case.

admission of the tribunal's determination by proposing such an instruction, we think the instruction put that determination in proper context and eliminated any prejudice to the defendants from its admission.

4. The defendants challenge the judge's failure to give certain requested jury instructions. None of these requested instructions appears in the record appendix. We may, but are not required to, consider them. Mass. R. A. P. 18 (a), as appearing in 378 Mass. 940 (1979). See *Ainslie* v. *Ainslie,* 6 Mass. App. Ct. 692, 695 n.3 (1978). We have mentioned some of them in our earlier discussion. See note 4 above and accompanying text. We refer to others briefly. (a) The judge's charge on the law of partnership covered the essential points and did not have to be in the form proposed by the defendants. (b) The judge did not have to give requested instructions that Dr. Alt would not be liable for any negligence in 1959 of the Beverly Hospital surgical resident. There was evidence that Dr. Alt had an obligation to oversee the work of the resident in training at the Beverly Hospital who reported that he removed the two Penrose drains. The hospital record shows some inconsistency concerning the removal of the drains. In one portion it indicates one drain was removed one day and the other two days later. However, Dr. Alt countersigned a note by the resident that states that both drains were removed at one time on a different day. In these circumstances, the judge was not required to tell the jury that Dr. Alt would not be liable for any negligence of the resident. (c) The judge gave adequate instructions on Van Dyke's duty of care (comparative negligence) and did not have to give the defendants' requested instruction on the same point.

*Order denying motion for a new trial affirmed.*

*Judgments affirmed.*